**BAKER & HOSTETLER LLP**
Thomas A. Canova (TC 7270)
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Deborah A. Wilcox (Ohio Bar No. 0038770)
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Attorneys for Plaintiff
pediped Infant Footwear LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDIPED INFANT FOOTWEAR LLC,<br><br>             Plaintiff,<br><br>          v.<br><br>KUDOS LEATHERGOODS LTD d/b/a<br>JACK AND LILY and ROBERT THOMAS<br>BUELL, Individually,<br><br>             Defendants. | CASE NO. 08-CIV-3572 (LTS) |

## PRELIMINARY PRE-TRIAL STATEMENT

Pursuant to Fed. R. Civ. P. 26(f) and the Court's Initial Conference Order dated April 22,

2008, and counsel for Plaintiff pediped Infant Footwear LLC ("Plaintiff" or "pediped") and

counsel for Defendant Robert Thomas Buell (Defendant "Buell")[1] having conferred, pediped files the following preliminary pretrial statement in accordance with Item 4 of the Initial Conference Order.

Neither Buell nor his counsel Robert Hanlon has provided any material for this Statement. Mr. Hanlon indicated on July 17 by email that he would not be submitting jointly, and would be filing a letter directly with the Court. Despite the Court's denial today of Buell's unilateral request to be excused from participation in this joint Statement, Mr. Hanlon has not provided any material for the Statement at the time of this filing and has responded by phone that we should proceed with this filing on behalf of Plaintiff only. *See* email correspondence with Mr. Hanlon, attached hereto as Exhibit A.

a.    A    concise    statement    of    the    nature    of    the    action:

Pediped seeks injunctive and monetary relief, including its attorneys' fees, against Defendants for trade dress infringement and unfair competition under the Federal Lanham Act, and for unfair competition and trade dress dilution under the statutory and common law of the State of New York. Pediped designs and sells distinctive soft-soled children's footwear in distinctive packaging. Pediped owns valuable trade dress rights in its line of shoes and packaging. Defendants copied pediped's line of shoes and packaging. Defendants' shoes directly compete with pediped's shoes and Defendants' activities have harmed pediped.

b.    A concise statement of each party's position as to the basis of the Court's jurisdiction of the action, with citations to all statutes relied upon and relevant facts as to citizenship and jurisdictional amount:

---

[1] Defendant Kudos Leathergoods Ltd d/b/a Jack and Lily ("Kudos") is in default. Kudos and Buell are sometimes collectively referred to herein as "Defendants."

(1)    Plaintiff:

This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1338 and 1367, 15 U.S.C. § 1121.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(d) because Defendants are aliens (Canadian citizens).  A substantial part of the event and omissions giving rise to the claims herein occurred in this District.

(2)    Defendants:

c.    A concise statement as to all material uncontested or admitted facts:

Kudos is a limited partnership organized and existing under the laws of British Columbia, Canada, having an office and place of business at 720 Alexander Street, Vancouver, British Columbia.  Kudos also markets and sells footwear in the United States for infants and young children.  Defendant Buell is involved in the business operations of Kudos.

Pediped and Kudos are direct competitors in the children's footwear industry in the United States.  Defendants market and sell children's footwear that is in direct competition with and sold through the same channels of trade and retail outlets as pediped's products.

Defendants' existing line of footwear, photographs of which are attached to the Amended Complaint as Exhibit 6, is distinct in overall appearance from pediped's lines.  Defendants' packaging for this line, photographs of which are attached to the Amended Complaint as Exhibit 7, is likewise distinct from pediped's packaging.

Defendant Kudos' website is at http://www.jackandlily.com and certain products were displayed there.

Pediped's cease and desist letter was hand delivered to Defendant Kudos on or about March 11, 2008 and Defendants did not give any indication as to how they would respond to the letter at that time.

d.    A concise statement of all uncontested legal issues:

The Court has jurisdiction of the subject matter of this action.

e.    A concise statement of all legal issues to be decided by the Court:

(1)    Plaintiff:

(i)    Whether pediped's trade dress has been infringed by Defendants in violation of the Lanham Act;

(ii)    Whether Defendants' actions constitute federal unfair competition;

(iii)    Whether Defendants have violated the New York General Business Law § 133 by their actions;

(iv)    Whether Defendants have diluted pediped's rights and injured its business reputation in violation of New York General Business Law § 360-1.

(v)    Whether Defendants have committed unfair competition under New York Common Law.

(vi)    Whether pediped is entitled to permanent injunctive relief.

(vii)    Whether pediped is entitled to its attorneys' fees.

(viii)    Whether Pediped is entitled to other relief, such as corrective advertising and a recall.

(2)    Defendants:

f.    Each party's statement of material disputed facts:

(1)    Plaintiff:

Pediped is one of the fastest growing children's footwear companies in the United States. Its first line of footwear, known as Originals, consists of children's shoes soled in soft leather and includes more than fifty designs in five sizes. Pediped's Originals collection is of an exceptionally high quality. In February 2008, pediped unveiled a line of rubber-soled shoes for children aged two to five.

Pediped's soft-soled line features distinctive styling. The overall look of the design for the line is sophisticated and more adult-like. Each shoe features a black sole with highly visible white hand-stitching, which creates a stylized rippled effect around the entire shoe. In addition, pediped shoes have a unique and distinctive profile that makes the sole visually small in relation to the upper, creating a clean, streamlined look. Also, unlike its competitors, pediped produces shoes that are formed, meaning that they do not fall flat like a sock when not worn. In part, the signature look of pediped's Originals results from the combination of seven key footwear dimensions that pediped worked hard to perfect. For pediped's soft-soled line, the tag is placed on the end of the Velcro strap. Despite variation among particular styles, the overall look makes pediped's Originals a cohesive line.

Pediped also developed a distinctive form of packaging for its shoes. The shoes are packaged in a sturdy, purple, and textured box with a clear plastic window through which the shoes can be viewed. The pediped logo and tag line are situated above the plastic window, with the tag line printed in smaller font. A description of the product is positioned at the bottom of

the box, below the window. The left and right sides of the box surrounding the window are of equal proportion to each other and the top portion of the box surrounding the window is more than twice the length of the bottom portion of the box surrounding the window. There is a cloth ribbon carrying handle at the top. This combination of elements is unique in the children's footwear industry.

Pediped spent over $1 million in 2007 in advertising its distinctive products. In 2008, advertising expenditures are expected to reach at least $1.7 million. Pediped advertises its distinctive footwear and packaging in consumer and industry magazines, including "Reader's Digest," "Parenting," "People," "US Weekly," "Baby Talk," "Working Mother," "Junior," "Wonder Time," "Cookie," "Earnshaw's," "American Baby," "Latina" and "Parents." Pediped also advertises its shoes on the pediped.com website, which has had over 325,000 unique visitors this year alone.

In addition, pediped has promoted its distinctive footwear and packaging at numerous trade shows, including, among others, MAGIC, the WSA Show, ENK International's Children's trade show, the ABC Kids Expo, and the California Gift Show.

There is ample anecdotal evidence that consumers across the country have come to recognize pediped's distinctive shoes by their particular design and packaging. Whenever a celebrity is photographed with his or her child wearing pediped shoes, pediped receives numerous emails and phone calls from people pointing out that the celebrity child is sporting pediped shoes. These consumers must be recognizing pediped's shoes solely by their distinctive design because, other than a small tag on the side of the shoe with pediped's bear logo, the pediped name and mark are not featured anywhere on the outside of pediped's footwear. In

addition, customers regularly compliment pediped on the unique packaging and style of its shoes.

At the end of 2005, pediped was selling into 350 stores. That number had increased to 1,200 stores at the end of 2006 and about 2,500 at the end of 2007. Pediped footwear has been sold through more than 3,000 stores worldwide.

Sales of pediped shoes have been beyond expectations. In 2005, total revenues were approximately $300,000. In 2006, sales grew to over $2.2 million. Pediped's growth continued in 2007, with total sales of over $7.6 million. Sales for 2008 are projected at $16 – 20 million, and $50 million by 2010.

Pediped footwear and its distinctive packaging is regularly featured in the media, including in publications like *Parenting*, *Earnshaw's*, *Pregnancy*, *Newborn*, *Fit Pregnancy*, *Parents*, *Chicago Baby*, *Find it!*, *Brava*, *Style*, *Country Living*, *Mom & Baby*, *Parents & Children*, *New Parent*, *Baby Talk*, *Wondertime*, *Child*, *Bundle*, *Los Angeles Magazine*, *New Parent*, *Baby Couture*, *Preemie*, and others; on television programs like *Extreme Makeover Home Edition*, the *CBS Early Show*, and *Access Hollywood*; and in websites and blogs like "Celebritybaby.com," "Totsnob.com," "Classymommy.com," "Celebritycafe.com," "Babble.com," "WSAToday.com," "Mothergoosemouse.com," and "Mommieswithstyle.com." Pediped receives unsolicited media coverage when the children of celebrities are photographed wearing pediped shoes.

In highlighting pediped's new line of rubber-soled shoes, *Earnshaw's*, a leading trade publication for the children's market, specifically referenced pediped's distinctive look: "The new styles for older children will be consistent with Pediped's signature design." Beyond mere

coverage, pediped has received awards from the media. In 2005, pediped won an "Earnie Award" for most innovative new brand from *Earnshaw's*. In 2007, pediped won the "Earnie Award" for Best Children's Footwear. *Consumer Reports* recognized pediped shoes in their 2007 Best Baby Products guide as one of the top recommendations for flexible children's footwear.

Trying to free ride on pediped's distinctive designs, other competitors have copied pediped's shoes. Stride Rite came out with a "Lucy Sykes Ethan" shoe that was highly similar to pediped's shoe #272. Through counsel, pediped sent Stride Rite a demand letter, and it discontinued the shoe. Similarly, sellers of Defendants' shoes have touted them as "similar to pediped's."

Since early 2006, pediped continuously has marketed and sold the specific overall design of children's footwear embodying and packaged in the trade dress at issue. Apart from Defendants' product at issue, pediped is and has been the only source of children's footwear featuring the combination of design and packaging elements that constitutes pediped's trade dress. In the two years that pediped's trade dress has been on the market, pediped's sales have grown rapidly. Pediped also greatly increased its advertising expenditures during this period. Moreover, pediped has taken measures to preserve its exclusivity with respect to use of the trade dress at issue.

Two years of exclusive use in these circumstances is more than sufficient time for pediped to have achieved secondary meaning in its trade dress

Having enjoyed phenomenal success in the marketplace, pediped's distinctive shoe design and packaging are widely recognized by consumers as identifying pediped's high quality product. Pediped's trade dress is non-functional.

On March 11, 2008, pediped attended the ENK Children's Club show at the Jacob Javits Center in New York and at that show, several people informed pediped that a competitor was selling a rip-off line of children's shoes. One person even asked whether pediped owned this company.

Upon investigation, Pediped discovered that Defendants were selling a new line of children's shoes that copied pediped's soft-soled shoes. Defendants promoted their new line on their web site at jackandlily.com, indicating that the line was available April 20, 2008.

Pediped has used a factory in China called Peacebird to manufacture its shoes. Pediped has learned from employees at Peacebird that Defendants contacted Peacebird. Pediped believes that Peacebird provided pediped's confidential drawings for its shoe designs to Defendants because Defendants could not have copied pediped's soft-sole shoes with such precision without its shoe last and cutting dies.

Defendants' new shoe design is indistinguishable from pediped's design. Defendants offer the identical shoe, in identical proportions, and even the strap is the same. It is beyond coincidence that Defendants' shoes would use the same dimensions for making shoes that pediped does, given the huge number of combinations mathematically available that would still result in appealing children's shoes.

Beyond copying the exact shoe dimensions, Defendants' shoes copy pediped's distinctive white stitching on black soles, the stylized rippling around the entire shoe, or both. Defendants also copy pediped's use of a white sewn-in tag on the end of the strap of the shoe. Defendants' new line of shoes has the same overall look and feel of pediped's shoes.

Defendants' shoes copy even more from many of pediped's better-selling styles, including colors and design features. This striking similarity in the face of virtually endless alternative designs, colors, features, and combinations shows that Defendants intentionally copied pediped's product. On their website, Defendants even copy the descriptors pediped uses to market its soft-soled shoes.

For this new line of shoes, Defendants also copied pediped's distinctive packaging. Instead of using the same plastic packaging that they use for their existing line, Defendants package their new line in colored boxes with handles, which are the same size and shape as pediped's boxes. Defendants' packaging includes a plastic window of the same size and shape; the same proportions on the front of the box surrounding the window, the left and right sides surrounding the window being of equal proportion to each other and the top surrounding the window being more than twice the length of the bottom surrounding the window; and a logo in the same place above the window, with additional content located beneath the logo in smaller font and below the window. The box has a cloth ribbon carrying handle.

Defendants' shoes and packaging are not of as high quality as those of pediped.

Consumers of children's shoes are not likely to exercise a high degree of care, given that the shoes are relatively inexpensive items.

Defendants' bad faith intent to trade on pediped's goodwill is undeniably apparent from their obvious copying of several of pediped's better-selling shoe styles. Sellers of the shoes refer to Defendants' shoes as similar to pediped's.

Defendants' conduct threatens irreparable injury not only to pediped's brand but also to businesses that sell pediped's shoes. Defendants have unfairly profited from their actions. Pediped has suffered monetary damages in an amount to be determined.

(2)    Defendants:

g.    A concise statement by each plaintiff and each counterclaimant of the legal basis of each cause of action asserted, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by such plaintiff or counterclaimant:

(1)    Plaintiff:

Pediped's trade dress claim and unfair competition claims are under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Pediped will prove (1) that its trade dress is distinctive as to the source of its footwear, (2) that there is a likelihood of confusion between pediped's and Defendants' footwear, and (3) that pediped's trade dress is nonfunctional. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240-41 (S.D.N.Y. 2004); *see also Fun-Damental Too, Ltd.*, 111 F.3d at 999 (2d Cir. 1997) (stating elements of claim); *Samara Bros. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 127-28 (2d Cir. 1998), *rev'd on other grounds*, 529 U.S. 205 (2000); *Oral-B Labs., Inc. v. Mi-Lor Corp*, 810 F.2d 20, 23 (2d Cir. 1987); *Centaur Commc'ns, Ltd v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987); *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *Aedes de Venustas v. Venustas Int'l, LLC*, No. 07 Civ. 4530 (LTS) (THK), 2007 U.S. Dist. LEXIS 66586, at *9-10 (S.D.N.Y. Sept.

11, 2007); *GMA Accessories, Inc. v. Bop, LLC*, 507 F. Supp. 2d 361, 364 (S.D.N.Y. 2007) *vacated on other grounds*, 2008 U.S. Dist. LEXIS 26120 (S.D.N.Y. Mar. 20, 2008); *Fruit-Ices Corp. v. CoolBrands Int'l Inc.*, 335 F. Supp. 2d 412, 419 (S.D.N.Y. 2004).

On the claim under New York common law, secondary meaning need not be proved. Otherwise, the elements are essentially the same as its claim for trade dress infringement under § 43(a) of the Lanham Act. *See Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ 195 (GEL), 2006 U.S. Dist. LEXIS 66637 (S.D.N.Y. Sept. 13, 2006); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01 Civ 11295, 2003 U.S. Dist. LEXIS 7844, at *39 (S.D.N.Y. May 8, 2003);*Ideal Toy Corp. v. Chinese Arts & Crafts Inc.*, 530 F. Supp. 375, 379 (S.D.N.Y. 1981).

Pediped's claim for dilution and injury to business reputation is under New York General Business Law § 360-1. Pediped will prove (1) the trade dress is truly of distinctive quality and (2) likelihood of dilution or whittling down of the identity or reputation of the trade dress. *See Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ 195 (GEL), 2006 U.S. Dist. LEXIS 66637 (S.D.N.Y. Sept. 13, 2006); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240-41 (S.D.N.Y. 2004); *Scholastic, Inc. v. Stouffer,* 124 F. Supp. 2d 836, 848 (S.D.N.Y. 2000); *Lord Jeff Knitting Co. v. Warnaco, Inc.*, 594 F. Supp. 579, 582 (S.D.N.Y. 1984).

(2)    Defendants-counterclaimants:

h.    Each party's concise statement of the legal basis of each defense asserted or expected to be asserted by such party, including citations to all statutes, Rules, and other applicable regulatory and judicial authority intended to be relied upon by such party:

(1)    Plaintiff:  There is no counterclaim so Pediped asserts no defenses.

(2)    Defendants:

  i.  A concise statement of the measure of proof on whom the burden of proof falls as to each cause of action or defense:

    (1)  Plaintiff:

  Pediped bears the burden of proof on each of the allegations in the Amended Complaint. The measure of proof is a preponderance of the evidence.  Defendant bears the burden of proof on its defenses, by a preponderance of the evidence.

    (2)  Defendants:

  j.  Whether and to what extent amendments to pleadings and/or the addition or substitution of parties will be required and proposed deadlines therefor:

    (1)  Plaintiff:

  There may be additional parties to add as defendants to the extent others were involved in the activities complained of in the Amended Complaint.  Plaintiff's proposed deadline for amendments or addition of parties is September 30, 2008.

    (2)  Defendants:

  k.  A statement as to whether all parties consent to transfer of the case to a magistrate judge for all purposes, including trial (without identifying which parties have or have not so consented):

  All parties do not consent to transfer the case to a magistrate judge for all purposes.

  l.  What, if any, changes should be made in the timing, form or requirements for disclosures under Fed. R. Civ. P. 26(a), including a statement as to when any disclosures required to be made under Fed. R. Civ. P. 26(a)(1) were made or will be made:

(1)    Plaintiff:

Plaintiff proposes that the parties exchange initial disclosures by July 30, 2008 and that the parties otherwise will follow Rule 26(a) with respect to required disclosures.

(2)    Defendants:

m.    The subjects on which disclosure may be needed and a proposed discovery cut-off date:

(1) Plaintiff:

The subjects on which disclosure may be needed include the names of relevant parties and people with information about the allegations in the Amended Complaint and Defendant Buell's defenses; identification and production of documents; expert disclosures and pretrial disclosures.  Plaintiff proposes a discovery cutoff date of December 5, 2008.

(2) Defendants:

n.    Whether and to what extent expert evidence will be required, and proposed deadlines for expert discovery:

(1)    Plaintiff:

Expert evidence may be required on Plaintiff's damages claims and on its claim for an accounting of Defendants' profits.  Plaintiff proposes a deadline for expert discovery of March 2, 2009.

(2)    Defendants:

o.    What, if any, changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of court, and what other limitations should be imposed:

(1)    Plaintiff:    None.

(2)    Defendants:

p.    The status of settlement discussions and the prospects for settlement of the action

in whole or in part, provided that the Preliminary Pre-Trial Statement shall not disclose to the

Court specific settlement offers or demands:

(1)    Plaintiff:

The parties extensively explored settlement, beginning immediately after the original

Complaint was filed, but have not been able to reach a settlement.  The case is not ripe at this

time for settlement.  Plaintiff requires discovery from Defendant Buell and perhaps others to

learn the full scope and extent of Defendants' illicit activities, the profits earned and the damage

caused.

(2)    Defendants:

q.    A statement by each party as to whether the case is to be tried with or without a

jury, and the number of trial days expected to be needed for presentation of that party's case:

(1)    Plaintiff:

The Plaintiff seeks a jury trial.  The anticipated number of days for Plaintiff's

presentation of its case is 3-5.

(2)    Defendants:

r.    Any other orders that should be entered by the Court under Fed. R. Civ. P. 26(c)

or Fed. R. Civ. P. 16(b) and (c):

(1)    Plaintiff:    None

(2)    Defendants:

Dated July 18, 2008

BAKER & HOSTETLER LLP

Deborah A. Wilcox (Ohio Bar No. 0038770)
Baker & Hostetler LLP
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114-3485
T:  216.621.0200
F:  216.696.0740
dwilcox@bakerlaw.com

Counsel for Plaintiff

501977432.1, Pediped Preliminary Pre-Trial Statement

# EXHIBIT A

**Wilcox, Deborah**

| | |
|---|---|
| **From:** | Hanlon, Robert [Robert.Hanlon@alston.com] |
| **Sent:** | Friday, July 18, 2008 11:31 AM |
| **To:** | Wilcox, Deborah |
| **Subject:** | Re: Preliminary Pre-Trial Statement.DOC |

I am traveling today and do not have access to my computer until I land early this afternoon. We will be responding then.
Bob Hanlon

-----Original Message-----
From: Wilcox, Deborah <DWilcox@bakerlaw.com>
To: Hanlon, Robert
Sent: Fri Jul 18 11:18:29 2008
Subject: RE: Preliminary Pre-Trial Statement.DOC

Dear Bob,

In light of the Court's ruling today (copy attached), what are your intentions with respect to the Pre-Trial Statement?  I attach our updated draft, which we intend to file and hand deliver to the judge this afternoon.  If you choose not to participate, I will so indicate in the Statement.  I need to know by 1:00 pm today.  Deborah

From: Hanlon, Robert [mailto:Robert.Hanlon@alston.com]
Sent: Thursday, July 17, 2008 5:43 PM
To: Wilcox, Deborah
Subject: RE: Preliminary Pre-Trial Statement.DOC

We are not submitting jointly, but are instead filing a letter directly with the Judge, with a copy to you.

Bob Hanlon

***************************
Robert E. Hanlon
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
(212) 210-9410 (tel)
(212) 210-9444 (fax)
robert.hanlon@alston.com
This email message is intended for the personal and confidential use of the individual/entity that is the named addressee. It may be an attorney-client communication and as such may contain information that is legally privileged or confidential or otherwise legally exempt from disclosure. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), any dissemination, distribution or copying of this e-mail message is
strictly prohibited. If you have received this message in error, please notify the sender and delete this e-mail message from your computer.

From: Wilcox, Deborah [mailto:DWilcox@bakerlaw.com]
Sent: Thursday, July 17, 2008 11:42 AM
To: Hanlon, Robert
Cc: Canova, Thomas
Subject: RE: Preliminary Pre-Trial Statement.DOC

Dear Robert, we need to hand deliver a courtesy copy of the Statement to the Judge tomorrow.  Will I have your additions by tomorrow noon?  Or earlier, if possible?  Thanks, Deborah

From: Wilcox, Deborah
Sent: Tuesday, July 15, 2008 5:41 PM
To: 'robert.hanlon@alston.com'
Cc: Canova, Thomas
Subject: Preliminary Pre-Trial Statement.DOC

Dear Robert,

I am attaching a draft of the Pre-trial Statement that is due to the Court on Friday.  Please send me your insertions or add them into this document directly by Friday noon so that we can finalize it for filing.  I may have a few changes to my section before filing, but wanted to get this to you as promised today.

We reject the settlement offer tendered on July 9.

Regards, Deborah

My Bio <http://www.bakerlaw.com/FindLawyers.aspx?Lookup_By_Email=dwilcox>   |   Web site <http://www.bakerlaw.com/>   |   V-card <http://www.bakerlaw.com/vcards/dwilcox.vcf>

T 216.861.7864
F 216.696.0740
M
www.bakerlaw.com <http://www.bakerlaw.com/>

Deborah A.  Wilcox
dwilcox@bakerlaw.com <mailto:%20dwilcox@bakerlaw.com>

Baker & Hostetler LLP
3200 National City Center
1900 East 9th Street
Cleveland, Ohio 44114-3485

<http://www.bakerlaw.com/>

2

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

*********************************************************
IRS Circular 230 disclosure:  To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

NOTICE:  This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee.  If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited.  If you have received this message in error, please notify the sender immediately by telephone (404-881-7000) or by electronic mail (postmaster@alston.com), and delete this message and all copies and backups thereof.  Thank you.

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law.  If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of July, 2008, a copy of the foregoing

**PRELIMINARY PRE-TRIAL STATEMENT with EXHIBIT A** was filed electronically.

Notice of this filing was sent to all parties who have appeared by operation of the Court's

Electronic Filing System.

Theresa Blaber
Paralegal