UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDIPED INFANT FOOTWEAR LLC,<br><br>Plaintiff,<br><br>v.<br><br>KUDOS LEATHERGOODS LTD d/b/a JACK AND LILY and ROBERT THOMAS BUELL, Individually,<br><br>Defendants. | CASE NO. 08-CIV-3572 (LTS) |

**PRELIMINARY PRE-TRIAL STATEMENT**

Pursuant to Fed. R. Civ. P. 26(f) and the Court's Initial Conference Order dated April 22, 2008, and counsel for Plaintiff pediped Infant Footwear LLC ("Plaintiff" or "pediped") and counsel for Defendant Robert Thomas Buell (Defendant "Buell")[1] having conferred, file the following preliminary pretrial statement in accordance with Item 4 of the Initial Conference Order:

    a.    A concise statement of the nature of the action:

Pediped seeks injunctive and monetary relief, including its attorneys' fees, against Defendants for trade dress infringement and unfair competition under the Federal Lanham Act, and for unfair competition and trade dress dilution under the statutory and common law of the State of New York. Pediped designs and sells soft-soled children's footwear. Pediped claims to own valuable trade dress rights in its line of shoes and packaging. Defendants sell shoes that pediped claims it copied from pediped's line of shoes and packaging. Certain of Defendants'

---

[1] Defendant Kudos Leathergoods Ltd d/b/a Jack and Lily ("Kudos") is in default. Kudos and Buell are sometimes collectively referred to herein as "Defendants."

shoes compete with pediped's shoes. Pediped claims that Defendants' activities have harmed pediped. [modified from Plaintiff's submission.]

      b.      A concise statement of each party's position as to the basis of the Court's jurisdiction of the action, with citations to all statutes relied upon and relevant facts as to citizenship and jurisdictional amount:

           (1)      Plaintiff: This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1338 and 1367, 15 U.S.C. § 1121. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(d) because Defendants are aliens (Canadian citizens). A substantial part of the event and omissions giving rise to the claims herein occurred in this District.

           (2)      Defendants: This Court does not have jurisdiction over the Defendant Buell. He is not present in this district and has had no personal contacts with this district sufficient to convey jurisdiction. Venue is not proper in this district under the principles of forum non conveniens.

      c.      A concise statement as to all material uncontested or admitted facts:

Kudos is a limited partnership organized and existing under the laws of British Columbia, Canada, having an office and place of business at 720 Alexander Street, Vancouver, British Columbia. Kudos also markets and sells footwear in the United States for infants and young children. Defendant Buell is involved in the business operations of Kudos.

Pediped and Kudos are direct competitors in the children's footwear industry in the United States. Defendants market and sell children's footwear that is in direct competition with and sold through the same channels of trade and retail outlets as pediped's products.

Defendants' existing line of footwear, photographs of which are attached to the Amended Complaint as Exhibit 6, is distinct in overall appearance from pediped's lines. Defendants' packaging for this line, photographs of which are attached to the Amended Complaint as Exhibit 7, is likewise distinct from pediped's packaging.

Defendant Kudos' website is at http://www.jackandlily.com and certain products were displayed there.

Pediped's cease and desist letter was hand delivered to Defendant Kudos on or about March 11, 2008 and Defendants did not give any indication as to how they would respond to the letter at that time.

    d.    A concise statement of all uncontested legal issues:

The Court has jurisdiction of the subject matter of this action.

    e.    A concise statement of all legal issues to be decided by the Court:

    (1)    Plaintiff:

    (i)    Whether pediped's trade dress has been infringed by Defendants in violation of the Lanham Act;

    (ii)    Whether Defendants' actions constitute federal unfair competition;

    (iii)    Whether Defendants have violated the New York General Business Law § 133 by their actions;

    (iv)    Whether Defendants have diluted pediped's rights and injured its business reputation in violation of New York General Business Law § 360-1.

    (v)    Whether Defendants have committed unfair competition under New York Common Law.

    (vi)  Whether pediped is entitled to permanent injunctive relief.

    (vii)  Whether pediped is entitled to its attorneys' fees.

  (2)  Defendants:

    The above items and:

    (viii)  Whether Buell is entitled to his attorneys' fees.

 f.  Each party's statement of material disputed facts:

  (1)  Plaintiff:

Pediped is one of the fastest growing children's footwear companies in the United States. Its first line of footwear, known as Originals, consists of children's shoes soled in soft leather and includes more than fifty designs in five sizes. Pediped's Originals collection is of an exceptionally high quality. In February 2008, pediped unveiled a line of rubber-soled shoes for children aged two to five.

Pediped's soft-soled line features distinctive styling. The overall look of the design for the line is sophisticated and more adult-like. Each shoe features a black sole with highly visible white hand-stitching, which creates a stylized rippled effect around the entire shoe. In addition, pediped shoes have a unique and distinctive profile that makes the sole visually small in relation to the upper, creating a clean, streamlined look. Also, unlike its competitors, pediped produces shoes that are formed, meaning that they do not fall flat like a sock when not worn. In part, the signature look of pediped's Originals results from the combination of seven key footwear dimensions that pediped worked hard to perfect. For pediped's soft-soled line, the tag is placed on the end of the Velcro strap. Despite variation among particular styles, the overall look makes pediped's Originals a cohesive line.

Pediped also developed a distinctive form of packaging for its shoes. The shoes are packaged in a sturdy, purple, and textured box with a clear plastic window through which the shoes can be viewed. The pediped logo and tag line are situated above the plastic window, with the tag line printed in smaller font. A description of the product is positioned at the bottom of the box, below the window. The left and right sides of the box surrounding the window are of equal proportion to each other and the top portion of the box surrounding the window is more than twice the length of the bottom portion of the box surrounding the window. This combination of elements is unique in the children's footwear industry.

Pediped spent over $1 million in 2007 in advertising its distinctive products. In 2008, advertising expenditures are expected to reach at least $1.7 million. Pediped advertises its distinctive footwear and packaging in consumer and industry magazines, including "Reader's Digest," "Parenting," "People," "US Weekly," "Baby Talk," "Working Mother," "Junior," "Wonder Time," "Cookie," "Earnshaw's," "American Baby," "Latina" and "Parents." Pediped also advertises its shoes on the pediped.com website, which has had over 325,000 unique visitors this year alone.

In addition, pediped has promoted its distinctive footwear and packaging at numerous trade shows, including, among others, MAGIC, the WSA Show, ENK International's Children's trade show, the ABC Kids Expo, and the California Gift Show.

There is ample anecdotal evidence that consumers across the country have come to recognize pediped's distinctive shoes by their particular design and packaging. Whenever a celebrity is photographed with his or her child wearing pediped shoes, pediped receives numerous emails and phone calls from people pointing out that the celebrity child is sporting pediped shoes.

These consumers must be recognizing pediped's shoes solely by their distinctive design because, other than a small tag on the side of the shoe with pediped's bear logo, the pediped name and mark are not featured anywhere on the outside of pediped's footwear. In addition, customers regularly compliment pediped on the unique packaging and style of its shoes.

At the end of 2005, pediped was selling into 350 stores. That number had increased to 1,200 stores at the end of 2006 and about 2,500 at the end of 2007. Pediped footwear has been sold through more than 3,000 stores worldwide.

Sales of pediped shoes have been beyond expectations. In 2005, total revenues were approximately $300,000. In 2006, sales grew to over $2.2 million. Pediped's growth continued in 2007, with total sales of over $7.6 million. Sales for 2008 are projected at $16 – 20 million, and $50 million by 2010.

Pediped footwear and its distinctive packaging is regularly featured in the media, including in publications like *Parenting*, *Earnshaw's*, *Pregnancy*, *Newborn*, *Fit Pregnancy*, *Parents*, *Chicago Baby*, *Find it!*, *Brava*, *Style*, *Country Living*, *Mom & Baby*, *Parents & Children*, *New Parent*, *Baby Talk*, *Wondertime*, *Child*, *Bundle*, *Los Angeles Magazine*, *New Parent*, *Baby Couture*, *Preemie*, and others; on television programs like *Extreme Makeover Home Edition*, the *CBS Early Show*, and *Access Hollywood*; and in websites and blogs like "Celebritybaby.com," "Totsnob.com," "Classymommy.com," "Celebritycafe.com," "Babble.com," "WSAToday.com," "Mothergoosemouse.com," and "Mommieswithstyle.com." Pediped receives unsolicited media coverage when the children of celebrities are photographed wearing pediped shoes.

In highlighting pediped's new line of rubber-soled shoes, *Earnshaw's*, a leading trade publication for the children's market, specifically referenced pediped's distinctive look: "The

new styles for older children will be consistent with pediped's signature design." Beyond mere coverage, pediped has received awards from the media. In 2005, pediped won an "Earnie Award" for most innovative new brand from *Earnshaw's*. In 2007, pediped won the "Earnie Award" for Best Children's Footwear. *Consumer Reports* recognized pediped shoes in their 2007 Best Baby Products guide as one of the top recommendations for flexible children's footwear.

Trying to free ride on pediped's distinctive designs, other competitors have copied pediped's shoes. Stride Rite came out with a "Lucy Sykes Ethan" shoe that was highly similar to pediped's shoe #272. Through counsel, pediped sent Stride Rite a demand letter, and it discontinued the shoe. Similarly, sellers of Defendants' shoes have touted them as "similar to pediped's."

Since early 2006, pediped continuously has marketed and sold the specific overall design of children's footwear embodying and packaged in the trade dress at issue. Apart from Defendants' product at issue, pediped is and has been the only source of children's footwear featuring the combination of design and packaging elements that constitutes pediped's trade dress. In the two years that pediped's trade dress has been on the market, pediped's sales have grown rapidly. Pediped also greatly increased its advertising expenditures during this period. Moreover, pediped has taken measures to preserve its exclusivity with respect to use of the trade dress at issue.

Two years of exclusive use in these circumstances is more than sufficient time for pediped to have achieved secondary meaning in its trade dress

Having enjoyed phenomenal success in the marketplace, pediped's distinctive shoe design and packaging are widely recognized by consumers as identifying pediped's high quality product.

On March 11, 2008, pediped attended the ENK Children's Club show at the Jacob Javits Center in New York and at that show, several people informed pediped that a competitor was selling a rip-off line of children's shoes. One person even asked whether pediped owned this company.

Upon investigation, pediped discovered that Defendants were selling a new line of children's shoes that copied pediped's soft-soled shoes. Defendants promoted their new line on their web site at jackandlily.com, indicating that the line was available April 20, 2008.

Pediped has used a factory in China called Peacebird to manufacture its shoes. Pediped has learned from employees at Peacebird that Defendants contacted Peacebird. Pediped believes that Peacebird provided pediped's confidential drawings for its shoe designs to Defendants because Defendants could not have copied pediped's soft-sole shoes with such precision without its shoe last and cutting dies.

Defendants' new shoe design is indistinguishable from pediped's design. Defendants offer the identical shoe, in identical proportions, and even the strap is the same. It is beyond coincidence that Defendants' shoes would use the same dimensions for making shoes that pediped does, given the huge number of combinations mathematically available that would still result in appealing children's shoes.

Beyond copying the exact shoe dimensions, Defendants' shoes copy pediped's distinctive white stitching on black soles, the stylized rippling around the entire shoe, or both. Defendants also copy pediped's use of a white sewn-in tag on the end of the strap of the shoe. Defendants' new line of shoes has the same overall look and feel of pediped's shoes.

Defendants' shoes copy even more from many of pediped's better-selling styles, including colors and design features. This striking similarity in the face of virtually endless alternative designs, colors, features, and combinations shows that Defendants intentionally copied pediped's product. On their website, Defendants even copy the descriptors pediped uses to market its soft-soled shoes.

For this new line of shoes, Defendants also copied pediped's distinctive packaging. Instead of using the same plastic packaging that they use for their existing line, Defendants package their new line in colored boxes with handles, which are the same size and shape as pediped's boxes. Defendants' packaging includes a plastic window of the same size and shape; the same proportions on the front of the box surrounding the window, the left and right sides surrounding the window being of equal proportion to each other and the top surrounding the window being more than twice the length of the bottom surrounding the window; and a logo in the same place above the window, with additional content located beneath the logo in smaller font and below the window. Defendants' intent to trade on pediped's goodwill is undeniably apparent from their obvious copying of several of pediped's better-selling shoe styles.

Defendants' conduct threatens irreparable injury not only to pediped's brand but also to businesses that sell pediped's shoes. Defendants have unfairly profited from their actions. Pediped has suffered monetary damages in an amount to be determined.

        (2)   Defendants:

Kudos has been in the leather goods business for over 20 years and has been manufacturing soft-soled shoes under the Jack & Lily name since 2003. It is a reputable company which currently holds the 2007 award for most outstanding Canadian Baby Brand as voted on by retailers within

North America (Earnshaw's Magazine). It has sold to over 2,000 stores, primarily in the U.S. and Canada, since introducing its Jack & Lily products in 2003.

Kudo's original line of shoes is for indoor use only. It had been researching the market to develop a new line of soft-soled shoes that would be appropriate for indoor and outdoor use, as the majority of other manufacturers in this field have done.

Kudo's hired a company to design a collection of 25 styles and paid over $10,000 for their service. This was the same company that designs the original line of Kudo's shoes. This new line of shoes is not a copy of pediped. Kudos specifically hired a designer to further distinguish themselves from any of the competition and decided to add rubber sole pads to the leather soles. This is in marked contrast to pediped's soles which are made from a single material. Many of the new Jack & Lily designs, about which pediped complains, are similar to the original Jack & Lily line, creating a cohesive appearance between both collections.

Kudos' designs and applications are very different from pediped's. The majority of Kudos' shoes are a classic 'Mary-Jane' shape with unique designs and appliqués. Kudos added rubber sole pads, clearly embossed with the Jack & Lily logo, to its leather soles to add extra grip. Pediped uses a 100% rubber sole with no added sole pads and no leather base.

Only 10 of Kudos' 24 designs have a black sole. They use numerous other colors including grey, brown, white, green and pink soles, which variety makes Kudos' collection unique. Kudos' tag is sewn on the opposite end of the strap, compared to pediped, and there is no other appropriate place to attach a tag. Several other companies use a stitch style to attach the sole to the upper that is highly similar or identical to that claimed to be owned by pediped. These

include, but are not limited to Pedoodles and Nowali. Some of these uses predate the adoption of this stitch design by pediped.

Pediped's packaging is likewise functional and not entitled to protection. The use of a clear plastic window to display a product is widely used in virtually every industry and is used in clothing and shoe sales as well. There is very little room to vary the shape and size of a plastic window for a product such as this. Handles to carry boxes are also widespread in the industry.

On March 11th 2008, pediped served a letter on Kudo's claiming they were "the owner of a design patent application Serial No. 29/270,402 and a utility patent application" Kudos retained a search service to obtain details about these claimed patents but was unable to find any reference to the application whatsoever. On March 14th 2008, Kudos wrote pediped to advise them that Kudos was unable to find anything in regards to their patent application. Pediped never responded to Kudos' letter. Approximately, 4 weeks later pediped filed the lawsuit.

An agent in China contacted Kudos in regards to the new design and emailed pictures of a few different styles. The factory that is producing Kudos current line of indoor / outdoor shoes owns the lasts and cutting dies

Kudos has never visited China personally and has never known the name of the manufacturer or heard of the name Peacebird. All of Kudos' communication has been through a third party agent. As stated above, the factory that produces Kudos' shoes told Kudos' agent that they own the last and cutting dies and that Kudos would be the sole owners of these dies. Kudos' agent has since signed a contract with the factory guaranteeing they will only produce this type of shoe for Kudos.

      g.      A concise statement by each plaintiff and each counterclaimant of the legal basis of each cause of action asserted, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by such plaintiff or counterclaimant:

      (1)      Plaintiff:

Pediped's trade dress claim and unfair competition claims are under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Pediped will prove (1) that its trade dress is distinctive as to the source of its footwear, (2) that there is a likelihood of confusion between pediped's and Defendants' footwear, and (3) that pediped's trade dress is nonfunctional. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240-41 (S.D.N.Y. 2004); *see also Fun-Damental Too, Ltd.*, 111 F.3d at 999 (2d Cir. 1997) (stating elements of claim); *Samara Bros. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 127-28 (2d Cir. 1998), *rev'd on other grounds*, 529 U.S. 205 (2000); *Oral-B Labs., Inc. v. Mi-Lor Corp*, 810 F.2d 20, 23 (2d Cir. 1987); *Centaur Commc'ns, Ltd v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987); *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *Aedes de Venustas v. Venustas Int'l, LLC*, No. 07 Civ. 4530 (LTS) (THK), 2007 U.S. Dist. LEXIS 66586, at *9-10 (S.D.N.Y. Sept. 11, 2007); *GMA Accessories, Inc. v. Bop, LLC*, 507 F. Supp. 2d 361, 364 (S.D.N.Y. 2007) *vacated on other grounds*, 2008 U.S. Dist. LEXIS 26120 (S.D.N.Y. Mar. 20, 2008); *Fruit-Ices Corp. v. CoolBrands Int'l Inc.*, 335 F. Supp. 2d 412, 419 (S.D.N.Y. 2004).

On the claim under New York common law, secondary meaning need not be proved. Otherwise, the elements are essentially the same as its claim for trade dress infringement under § 43(a) of the Lanham Act. *See Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ 195 (GEL), 2006 U.S. Dist. LEXIS 66637 (S.D.N.Y. Sept. 13, 2006); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No.

01 Civ 11295, 2003 U.S. Dist. LEXIS 7844, at *39 (S.D.N.Y. May 8, 2003); *Ideal Toy Corp. v. Chinese Arts & Crafts Inc.*, 530 F. Supp. 375, 379 (S.D.N.Y. 1981).

Pediped's claim for dilution and injury to business reputation is under New York General Business Law § 360-1. Pediped will prove (1) the trade dress is truly of distinctive quality and (2) likelihood of dilution or whittling down of the identity or reputation of the trade dress. *See Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ 195 (GEL), 2006 U.S. Dist. LEXIS 66637 (S.D.N.Y. Sept. 13, 2006); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 240-41 (S.D.N.Y. 2004); *Scholastic, Inc. v. Stouffer,* 124 F. Supp. 2d 836, 848 (S.D.N.Y. 2000); *Lord Jeff Knitting Co. v. Warnaco, Inc.*, 594 F. Supp. 579, 582 (S.D.N.Y. 1984).

    (2) Defendants-counterclaimants:

Defendant has not submitted counterclaims. However, pediped cannot meet its burden of proof. The vast majority of what pediped claims as proprietary consists of functional features that are entitled to no protection, or are ornamental features that have been used by others. The amount of protection that is afforded to articles of clothing is extremely narrow. Pediped's features do not fit into the few narrow exceptions that are entitled to protection.

There is no cohesive trade dress remaining once the functional elements are removed, and the combination of supposedly decorative elements does not create a distinctive appearance. Finally, pediped is not the originator, nor is it the exclusive source of some of the elements that it claims are most distinctive.

Pediped must prove that its dress has acquired distinctive and it cannot do so. Its anecdotal "evidence" does not meet that standard.

Pediped's packaging is also functional and no aspect of it is distinctive enough to warrant protection.

      h.      Each party's concise statement of the legal basis of each defense asserted or expected to be asserted by such party, including citations to all statutes, Rules, and other applicable regulatory and judicial authority intended to be relied upon by such party:

          (1)     Plaintiff:  There is no counterclaim so pediped asserts no defenses.

          (2)     Defendants:

Pediped fails to make a claim upon which relief can be granted. Its supposed statement of its trade dress merely lists the elements that are common to every soft soled shoe without d3escribing the unique aspects of its product. Each of the aspects it lists is functional and cannot be protected in trade dress and would only be subject to utility patent protection, which pediped lacks.  The claim of protectable trade dress is simply without merit.

Numerous other companies have produced that are as similar to pediped's line as Kudos is. pediped has acquiesced in the use of the "dress" by others.  In fact one of the reasons pediped has not sought to enforce against some of the other lines is that those lines predate pediped's line. Pediped's claim of ownership is unenforceable because they have unclean hands in light of their copying of the designs of others and then claiming those designs as their own, whether or not those designs are protectable.

*Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 209 (2000); *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 533 F.Supp. 75, (S.D.Fla. 1981), aff'd 716 F.2d 854, (11th Cir. 1983); *Valu Eng'g Inc. v. Rexnord Corp,* 278 F3d 1268 (Fed Cir. 2002); *Landscape forms, Inc. v. Columbia Cascade Co.*,

113 F3d 373 (2d Cir. 1997); *Yurman Designs, Inc. v. Paj, Inc*. 2626 F.3d 101(2d cir. 2001); Jeffrey Millstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F3d 27 (2d Cir. 1995); *Henri Bendel, Inc. v. Sears, Roebuck and Co*., 25 F.Supp.2d 198 (S.D.N.Y. 1998); *Knitwaves, Inc. v. Lollytrogs Ltd.,* 71 F.3d 996 (2d Cir. 1995).

    i.    A concise statement of the measure of proof on whom the burden of proof falls as to each cause of action or defense:

    (1)    Plaintiff:

Pediped bears the burden of proof on each of the allegations in the Amended Complaint. The measure of proof is a preponderance of the evidence.

    (2)    Defendants: Agreed.

    j.    Whether and to what extent amendments to pleadings and/or the addition or substitution of parties will be required and proposed deadlines therefor:

    (1)    Plaintiff:

There may be additional parties to add as defendants to the extent others were involved in the activities complained of in the Amended Complaint. The proposed deadline for amendments or addition of parties is September 30, 2008.

    (2)    Defendants: No additional parties are contemplated, but Defendant Kudos may seek to open the default if the case proceeds.

    k.    A statement as to whether all parties consent to transfer of the case to a magistrate judge for all purposes, including trial (without identifying which parties have or have not so consented):

All parties do not consent to transfer the case to a magistrate judge for all purposes.

   l.  What, if any, changes should be made in the timing, form or requirements for disclosures under Fed. R. Civ. P. 26(a), including a statement as to when any disclosures required to be made under Fed. R. Civ. P. 26(a)(1) were made or will be made:

    (1)  Plaintiff:

The parties will exchange initial disclosures by July 23, 2008.  The parties otherwise will follow Rule 26(a) with respect to required disclosures.

    (2)  Defendants:

The Parties will exchange initial disclosures two weeks after the termination of settlement discussions with the magistrate.

   m.  The subjects on which disclosure may be needed and a proposed discovery cut-off date:

    (1) Plaintiff:  the subjects on which disclosure may be needed include the names of relevant parties and people with information about the allegations in the Amended Complaint; identification and production of documents; expert disclosures and pretrial disclosures.  The proposed discovery cutoff date is December 5, 2008.

    (2) Defendants:

In addition to the above, the history of the development of the alleged trade dress.  The existence of related and competing designs.  The proposed discovery cutoff date is February 1, 2009.

   n.  Whether and to what extent expert evidence will be required, and proposed deadlines for expert discovery:

    (1)  Plaintiff:

Expert evidence may be required on Plaintiff's damages claims and on its claim for an accounting of Defendants' profits. The proposed deadline for expert discovery is March 2, 2009.

    (2)    Defendants:

Expert evidence will be needed on the functionality of the designs at issue, acquired distinctiveness and on confusion. The proposed deadline for expert discovery is May 1, 2009

    o.    What, if any, changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules of court, and what other limitations should be imposed:

    (1)    Plaintiff:    None.

    (2)    Defendants:  Agreed.

    p.    The status of settlement discussions and the prospects for settlement of the action in whole or in part, provided that the Preliminary Pre-Trial Statement shall not disclose to the Court specific settlement offers or demands:

    (1)    Plaintiff:

The parties have explored extensively settlement since immediately after the original Complaint was filed but have not been able to reach a settlement.

    (2)    Defendants:

The Defendants have engaged in extensive attempts to resolve the matter, including accepting one of Plaintiff's settlement proposals, only to have the offers summarily rejected. Notwithstanding the foregoing, Defendants believe that, with the assistance of the Magistrate, settlement should be possible.

      q.      A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days expected to be needed for presentation of that party's case:

      (1)      Plaintiff:

The Plaintiff seeks a jury trial. The anticipated number of days for Plaintiff's presentation of its case is 3-5.

      (2)      Defendants:

Defendants seek a jury trial. The anticipated number of days for Defendants presentation is 2 to 4.

      r.      Any other orders that should be entered by the Court under Fed. R. Civ. P. 26(c) or Fed. R. Civ. P. 16(b) and (c):

      (1)      Plaintiff:    None

      (2)      Defendants:  None

          s/ Robert E. Hanlon
          Robert E. Hanlon
          (RH-8794)
          ALSTON & BIRD LLP
          90 Park Avenue
          New York, New York 10016
          (212-210-9410) office
          (212-210-9444) fax
          *Attorneys for Defendant Robert Thomas Buell*