**BAKER & HOSTETLER LLP**
Thomas A. Canova (TC 7270)
45 Rockefeller Plaza
New York, New York  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Deborah A. Wilcox (Ohio Bar No. 0038770)
3200 National City Center
1900 East 9th Street
Cleveland, OH  44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Attorneys for Plaintiff
pediped Infant Footwear LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDIPED INFANT FOOTWEAR LLC,<br><br>       Plaintiff,<br><br>    v.<br><br>KUDOS LEATHERGOODS LTD  d/b/a<br>JACK AND LILY and ROBERT THOMAS<br>BUELL, Individually,<br><br>       Defendants. | CASE NO. 08-CIV-3572 (LTS) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CIVIL CONTEMPT,
EQUITABLE AND MONETARY SANCTIONS, AND EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     STATEMENT OF FACTS ........................................................................ 3

        A.      The Underlying Action and Injunction ................................................. 3

        B.      Defendants' Violations of the Injunction .............................................. 4

III.    ARGUMENT .......................................................................................... 5

        A.      Defendants Are In Contempt of this Court's Injunction ......................... 5

        B.      Pediped Is Entitled to Relief Commensurate with the Damage Caused By
                Defendants' Contemptuous Violation of the Court's Injunction. ............. 8

        C.      Defendants Should Be Monetarily Sanctioned For Their Contempt. ......... 10

        D.      Expedited Discovery Is Warranted. ................................................... 12

IV.     CONCLUSION ....................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 Civ. 9721 (PKL) (THK),
2002 U.S. Dist. LEXIS 16323 (S.D.N.Y. Sept. 3, 2002)................................................ 6, 11, 12

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ................................................ 13, 14

*Behnam Jewelry Corp. v. Aron Basha Corp.*, 45 U.S.P.Q.2d (BNA) 1078 (S.D.N.Y. 1997)........ 9

*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, No. 81 Civ. 0093 (CSH), 1990
U.S. Dist. LEXIS 9059 (S.D.N.Y. July 23, 1990) ...................................................... 5

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 13 U.S.P.Q.2d (BNA) 1904 (S.D.N.Y.
1989).................................................................................................................. 9

*Goya Foods, Inc. v. Wallack Mgmt.*, 290 F.3d 63 (1st Cir. 2002)................................................ 6

*Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989) ................ 10, 11

*N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F. 2d 854 (2d Cir. 1984) ...................................... 11

*Nat'l Research Bureau, Inc. v. Kucker*, 481 F. Supp. 612 (S.D.N.Y. 1979) ................................ 6

*Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91 (2d Cir. 1993)............................................................ 10

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982).................................................................... 13

*Perfect Fit Indus., Inc. v. Acme Quilting Co*, 673 F.2d 53 (2d Cir. 1982)...................................... 8

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. 1981)............................ 9, 11

*Pharm. Soc. of New York, Inc. v. Cuomo*, 774 F. Supp. 826 (S.D.N.Y. 1991)............................ 12

*SEC v. Zubkis*, No. 97 Civ. 8086 (JGK), 2003 U.S. Dist. LEXIS 16152 (S.D.N.Y.
Sept. 10, 2003)........................................................................................................ 12

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002)............................ 14

*Shady Records, Inc. v. Source Enters.*, 351 F. Supp. 2d 64 (S.D.N.Y. 2004) ................................ 5

*Still's Pharmacy, Inc. v. Cuomo*, 981 F.2d 632 (2d Cir. 1992)................................................ 12

*Telebrands Corp. v. E. Mishan & Sons*, 46 U.S.P.Q.2D (BNA) 1493 (S.D.N.Y. 1997)................ 9

*The Upjohn Co. v. Medtron Laboratories, Inc.*, 894 F. Supp. 126 (S.D.N.Y. 1995) ................ 5, 6

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473 (S.D.N.Y. 1990) . 13

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 02 Civ. 5828(JFK), 2005 U.S.
Dist. LEXIS 14790 (S.D.N.Y. May 3, 2005).......................................................... 7

*Vuitton et Fils S.A. v. Carousel Handbags*, 592 F. 2d 126 (2d Cir. 1979) .................................. 11

*Weitzman v. Stein*, 98 F.3d 717 (2d Cir. 1996) .................................................................... 8, 12

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F.Supp.2d 228 (D.Del. 2003)........................ 12

## I.    PRELIMINARY STATEMENT

On June 19, 2008, this Court entered a Preliminary Injunction, expressly enjoining Kudos Leathergoods, Ltd ("Kudos") and its President, Robert Thomas Buell ("Buell"), "from manufacturing, advertising, offering for sale, selling, distributing, marketing, transporting, delivering, or in any way attempting to sell or resell the products and packaging identified in Exhibit A" to the order.  As amply demonstrated in the accompanying Declarations of Nancy M. Girouard ("Girouard Decl."), Theresa A. Blaber ("Blaber Decl.") and Deborah A. Wilcox ("Wilcox Decl."), Defendants have willfully violated the Court's Injunction.

Accordingly, pursuant to this Court's Local Civil Rule 83.9, pediped now seeks the following relief:

1.    A citation for civil contempt against Defendants.

2.    Amendments to the Preliminary Injunction that

(a)    require Defendants to recall the subject shoes and packaging from the marketplace by sending to each customer whom they have supplied with such products and packaging, excluding end consumers, a copy of the Preliminary Injunction and order of recall;

(b)    expressly confirm Defendants' existing legal obligation against destroying, tampering with, or otherwise disposing of the shoes, packaging, and all other evidence and relevant information and things, during the pendency of this action;

(c)    require Defendants, to avoid the risk that the subject products and packaging will continue to be shipped, to store them at a separate facility and to verify such storage by an independent third party;

(d)    require Defendants to disseminate corrective advertising, at Defendants' cost and upon Plaintiff's approval, that informs consumers, the trade and the public at large of

Defendants' unlawful conduct and of the injunction, and/or require Defendants to pay Plaintiff's costs for such corrective advertising;

      (e)    require Defendants to file with the Court and serve on pediped's counsel within thirty (30) days of the Amended Preliminary Injunction a written report, under oath, setting forth in detail the manner in which Defendants have complied with the Amended Preliminary Injunction; and

      (f)    require Defendants to file with the Court and serve on pediped's counsel within thirty (30) days of the Amended Preliminary Injunction a detailed written statement, prepared by an independent certified public accountant, of (i) the total quantities of shoes represented by the SKU numbers in Exhibit 1 to the Notice of Motion that were sold, distributed, transported, delivered, or otherwise marketed by or to Defendants and (ii) all revenues, gross profits and net profits derived by Defendants from U.S. sales of such shoes until the date of the Amended Preliminary Injunction.

3.    Expedited discovery with respect to Defendant Buell concerning

      (a)    the exact nature and scope of Defendants' violation(s) of the Court's Injunction and

      (b)    pediped's underlying claims of infringement, unfair competition and dilution.

4.    Monetary sanctions in the form of

      (a)    disgorgement of Defendants' revenue from their sales in violation of the Injunction;

      (b)    an additional coercive sanction in the amount of $1,000 a day for non-compliance;

      (c)    an award of pediped's costs; and

(d)    an award of pediped's attorneys' fees in connection with this motion and discovery conducted in conjunction with the motion.

## II.    STATEMENT OF FACTS

### A.    The Underlying Action and Injunction

On April 14, 2008, pediped commenced this case against Defendant Kudos, asserting federal claims for trade dress infringement and unfair competition, and claims for New York common law infringement, unfair competition and dilution and injury to business reputation. (Dkt. No. 1.)  On May 23, 2008, Pediped filed an Amended Complaint, adding Buell as a Defendant.  (Dkt. No. 7.)

On June 5, 2008, pediped moved for an Order to Show Cause re Preliminary Injunction. (Dkt. Nos. 9-14.)  On June 19, 2008, this Court held a hearing and issued an Order enjoining Defendants; neither Defendant attended the hearing.  (Dkt. Nos. 21, 26; *see* Transcript of June 19, 2008 Hearing, attached hereto as Exhibit 1.)  Pediped served the Order on Defendants on June 20, 2008, by email and facsimile, and through the Hague Convention on July 3, 2008.  (Dkt. Nos. 28-30, 35.)

On June 30, 2008, Defendant Buell filed an answer.  (Dkt. No. 25.)  Defendant Kudos failed to answer or otherwise respond to the Complaint or the Amended Complaint, and on June 27, 2008, the Clerk of the Court entered a default against it.  (*See* Clerk's Certificate, attached hereto as Exhibit 2.)

The Injunction expressly enjoins Defendants "from manufacturing, advertising, offering for sale, selling, distributing, marketing, transporting, delivering, or in any way attempting to sell or resell the products and packaging identified in Exhibit A" to the order.  (Dkt. No. 21.)

### B.     Defendants' Violations of the Injunction

In willful defiance of the Court's order, Defendants continue to sell shoes that the preliminary injunction clearly and unambiguously bars them from selling.  Over a month after the Court granted preliminary relief to pediped in this matter, California resident Nancy M. Girouard received from Defendants a shipment of the infringing shoes that gave rise to this action.  (*See* Girouard Decl.)

In mid-June 2008, Ms. Girouard requested and received a catalog from Defendants. (Girouard Decl. ¶¶ 2-3, Ex. 1.)  On June 25, 2008, Ms. Girouard ordered, among other styles, Defendants' SKU numbers 181 and 182, which are among those that the preliminary injunction prohibits Defendants from selling.  (Girouard Decl. ¶ 5, Ex. 1; Dkt. No. 21, Ex. A.)  On July 15, 2008, an email containing the signature block of Defendant Buell represented that Ms. Girouard's order had been shipped the preceding day.  (Girouard Decl. ¶ 7, Ex. 1.)  Defendants' shipment of Ms. Girourard's order on July 14 plainly followed entry of the injunction on June 19 (Dkt. No. 21), service of the injunction on Defendants and their Canadian counsel by email and facsimile on June 20 (Dkt. No. 35), and service of the injunction on Defendants under the Hague convention on July 3 (Dkt. Nos. 28-30).  There is no question that Defendants were subject to the injunction when they shipped this order.

When Ms. Girouard received her order on July 23, 2008, it included four pairs of shoes in style numbers 181 and 182 in blatant violation of the injunction.  (Girouard Decl. ¶ 9, Ex. 2.) Furthermore, these shoes arrived in the forbidden packaging (Girouard Decl. ¶ 11, Ex. 3) and the box included Defendants' brochure advertising the subject shoes (Blaber Decl. ¶ 3.)  Defendants' violation of the Court's preliminary injunction is unequivocal.

Upon being confronted with this evidence, Defendant Buell represents, through his counsel of record, Mr. Hanlon, that five orders totaling thirty-eight pairs of shoes subject to the

injunction have been shipped to the U.S. since June 20, 2008. (Wilcox Decl. ¶ 9.) Defendant Buell further represents that the sole employee responsible for shipping was instructed orally to ship no more of the subject shoes to the U.S. (Wilcox Decl. ¶ 9.) In addition, Mr. Buell claims that the email messages containing his signature block in the correspondence with Ms. Girouard (Girouard Decl. Ex. 1) were not written by him and that all emails that emanate from Defendant Kudos contain his signature block (Wilcox Decl. ¶ 9). Mr. Buell, however, has a history of not being forthright with Plaintiff. During the six weeks of settlement talks that immediately followed the filing of this Complaint, Mr. Buell, through various counsel, made four major false statements (Wilcox Decl. ¶¶ 5-8). His track record of misconduct, lack of candor and evasiveness require that any "facts" relayed by him be viewed in light of the relevant documentation (none has been provided by Mr. Buell) and subject to cross-examination through formal discovery. Because the harm has continued well after the Court's Injunction, Pediped respectfully seeks discovery on an expedited basis.

## III.    ARGUMENT

### A.    Defendants Are In Contempt of this Court's Injunction.

A party may be held in civil contempt when "[1] there is a clear and unambiguous order, [2] noncompliance is proved clearly and convincingly, and [3] the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, No. 81 Civ. 0093 (CSH), 1990 U.S. Dist. LEXIS 9059, at *17-18 (S.D.N.Y. July 23, 1990) (internal quotation marks omitted); *see also Shady Records, Inc. v. Source Enters.*, 351 F. Supp. 2d 64, 66 (S.D.N.Y. 2004) (reciting same elements in copyright case); *Upjohn Co. v. Medtron Labs., Inc.,* 894 F. Supp. 126, 133 (S.D.N.Y. 1995) (reciting same elements in patent case).

5

In the present case, this Court's June 19, 2008, Injunction is clear and unambiguous. Among other things, it expressly enjoins Defendants "from manufacturing, advertising, offering for sale, selling, distributing, marketing, transporting, delivering, or in any way attempting to sell or resell the products and packaging identified in Exhibit A" to the order. (Dkt. No. 21).

It would be absurd for Defendants to pretend that they did not understand the language, or at least the spirit or purpose, of the Injunction. *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, No. 96 Civ. 9721 (PKL) (THK), 2002 U.S. Dist. LEXIS 16323, at *26 (S.D.N.Y. Sept. 3, 2002) ("[T]he preliminary injunction unambiguously prohibits the use of Infringing Marks . . . ."); *see also Goya Foods, Inc. v. Wallack Mgmt.*, 290 F.3d 63, 77 (1st Cir. 2002) (finding injunction against "alienating or in any way assigning, transferring, selling, or otherwise disposing or encumbering [the Apartment,] including [the] cooperative shares [associated therewith]" to permit "no doubt as to what the court intended"); *Upjohn Co.*, 894 F. Supp. at 133 (finding injunctions that barred defendants from "manufacturing, selling or otherwise distributing the infringing product" and "the manufacturing, sale, distribution, advertisement, and promotion, of [Upjohn's patents]" to be clear and unambiguous); *Nat'l Research Bureau, Inc. v. Kucker*, 481 F. Supp. 612, 615 (S.D.N.Y. 1979) ("It is the spirit and purpose of an injunction, not merely its precise words, that must be obeyed.").

In addition, the evidence of Defendants' noncompliance is clear and convincing. In *A.V. by Versace, Inc.*, 2002 U.S. Dist. LEXIS 16323, at *26-27, the court found the plaintiff's evidence of the defendant's violation of the preliminary injunction, which included the purchase of infringing goods by plaintiff's attorneys, to be clear and convincing. Here, the record evidence of Defendants' noncompliance is every bit as clear and convincing. Pediped has submitted incontrovertible evidence that shoes, in packaging, with advertising, all of which are

unambiguously barred by the Court's injunction, continue to be sold and disseminated. (Girouard Decl. ¶¶ 7-11.)  On top of this, Defendant Buell admits that numerous shoes were shipped in violation of the injunction.  (Wilcox Decl. ¶ 9.)  Defendants' noncompliance is unequivocal.

Finally, Defendants' conduct is a far cry from a reasonably diligent and energetic attempt at compliance.  Defendant Buell represents that Defendants' single employee who is responsible for shipping was instructed orally not to ship the subject shoes to the U.S. and that emails containing Defendant Buell's signature block were not written by him.  (Wilcox Decl. ¶ 9.) Although one suspects that this self-serving testimony was fabricated in an attempt to disguise Defendants' willful noncompliance with the injunction, *see U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 02 Civ. 5828(JFK), 2005 U.S. Dist. LEXIS 14790, at *19 (S.D.N.Y. May 3, 2005) ("When called to account at the contempt hearing, Mr. Ni regaled the Court with a display of untruthfulness that would have astounded Pinocchio."), even if Defendant Buell's testimony is credited, Defendants still are in willful contempt of the preliminary injunction.

Mr. Buell's company is not so large nor is compliance with the Court's order so difficult that the prohibited conduct should be excused.  A single employee supposedly is responsible for all of the company's shipping.  (Wilcox Decl. ¶ 9.)  Conveniently for Defendant Buell, the alleged oral instructions to this employee were not in writing and consequently are not subject to this Court's scrutiny.  In light of the ineffectiveness of the alleged instructions, however, one must conclude that Defendants' efforts were not reasonably diligent and energetic and, in fact, that Defendants intended for the subject shoes, in the subject packaging, with a subject brochure, to continue to be shipped to the U.S.  It is simply unfathomable that Defendants could not, using their best or even sincere efforts, communicate to a single employee what must be done to

comply with the unambiguous order of a federal court. Rather, if Defendants did indeed do what Defendant Buell claims, it was merely to disguise their flagrant and arrogant disregard for the Court's injunction and not a bona fide attempt at compliance.

### B.    Pediped Is Entitled to Relief Commensurate with the Damage Caused By Defendants' Contemptuous Violation of the Court's Injunction.

It is well-settled that "sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). *See also Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 56-57 (2d Cir.1982) (upholding a $5,000 per day fine for contempt in a trade dress case).

The irreparable nature of the damage caused to pediped by Defendants' contempt simply cannot be rectified sufficiently by monetary damages, as this Court aptly understood in issuing its Preliminary Injunction. (Ex. 1, 13:25-14:4.) As set forth more fully in the declarations pediped submitted in support of its application for preliminary injunctive relief (Dkt. Nos. 11-14), Defendants' sale of the infringing shoes harms pediped irreparably in several respects. First, Defendants' free ride on pediped's distinctive trade dress gives them an unfair competitive advantage that could destroy pediped's brand. (Decl. of Angela Edgeworth, Dkt. No. 13, ¶¶ 69-70.) Second, Defendants permit just about anyone to sell their shoes, lessening pediped's hard-earned prestige. (Edgeworth Decl. ¶ 71.) Third, some of Defendants' shoes incorporate unsophisticated and tacky elements, further injuring pediped's reputation. (Edgeworth Decl. ¶ 72; Decl. of Kimberly A. Berry, Dkt. No. 12, ¶ 12.) Fourth, Defendants' above-market compensation for their sales representatives could result in an irreparable loss of pediped's market share. (Edgeworth Decl. ¶ 73.) Finally, quality issues with Defendants' infringing shoes threaten to irreparably damage pediped in obvious ways. (Edgeworth Decl. ¶¶ 61-67; Decl. of

Jinae Kang, Dkt. No. 11, ¶ 10.)  Under these circumstances, it is well within the broad discretion

of this Court to fashion appropriate equitable relief both as a compensatory sanction and as a

coercive sanction for Defendants' blatant civil contempt.

To order Defendants to recall all products and packaging subject to the preliminary

injunction is wholly appropriate under these circumstances:  "the imposition of a recall

requirement is well within the district court's broad powers as a court of equity."  *Perfect Fit*

*Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 805 (2d Cir. 1981).

In deciding whether to order the recall of infringing products, courts should "consider the

likely burden and expense of a recall to the defendant, and balance that burden against the

benefit that would accrue to the plaintiff."  *Behnam Jewelry Corp. v. Aron Basha Corp.*, 45

U.S.P.Q.2d (BNA) 1078, 1094 (S.D.N.Y. 1997); *see also Perfect Fit Indus., Inc.*, 646 F.2d at

807 (upholding district court's order of recall in trade dress case).  In *Benham Jewelry Corp.*, the

court found that this balancing test favored the plaintiff on facts similar to those before the court:

> In this case, the burden to the Counterclaim Defendants in recalling existing stock
> ordered by other jewelry businesses would not be unduly burdensome.  The
> Counterclaim Defendants need only write a letter to its [sic] wholesale customers
> and pay the cost of the return for customers who comply.  The recall of wholesale
> orders would significantly benefit [Counterclaim Plaintiff], who has testified that
> he risks losing customers if the infringing shoes are disseminated in the general
> marketplace.

45 U.S.P.Q.2d (BNA) at 1094 (citation omitted); *see also Telebrands Corp. v. E. Mishan &*

*Sons*, 46 U.S.P.Q.2D (BNA) 1493, 1511 (S.D.N.Y. 1997) (granting recall in connection with

preliminary injunction in trade dress case).  In addition, this court previously has ordered recall

pursuant to notice substantially identical to Exhibit 2 to pediped's proposed order.  *See Cullman*

*Ventures, Inc. v. Columbian Art Works, Inc.*, 13 U.S.P.Q.2d (BNA) 1904 (S.D.N.Y. 1989).

As discussed *supra* p. 8, the harm to pediped that would be avoided by a recall of the

products and packaging at issue is enormous and otherwise irreparable.  Defendants here, like

those in *Benham Jewelry Corp.*, need only communicate with their wholesale customers and pay the cost of returns to effectuate the recall. Plainly the benefit to pediped outweighs the burden on Defendants.

Finally, Defendants' bad faith and callous disregard of the Court's preliminary injunction militates toward the recall. In *Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 97 (2d Cir. 1993), the Second Circuit, in upholding the district court's recall order in a trademark case, emphasized the defendant's bad faith. Here, recall is an appropriate equitable sanction for Defendants' willful contempt.

### C.   Defendants Should Be Monetarily Sanctioned For Their Contempt.

Pediped's request for monetary sanctions falls into three categories – compensatory, coercive, and attorneys' fees.

First, the compensatory justification for a civil contempt fine does not depend on a showing of actual pecuniary loss. *See Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) (awarding compensation to contempt movant who had not proved injury in trademark case). Where actual losses are difficult to demonstrate, the law allows recovery of the contemnor's ill-gotten gains: "under a theory of unjust enrichment, a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury." *Id.* at 6.

Accordingly, in the present case, given the inherent difficulty in calculating the dollar amount of actual damage to pediped's goodwill, reputation, and customer relationships, as an award of compensatory damages and a coercive sanction, the Court should order disgorgement of the income received. In furtherance of this relief, the Court should order also that Defendants engage an independent certified public accountant to prepare a written statement of the total quantities of shoes identified in Exhibit A to the Preliminary Injunction and all revenues, gross profits and net profits derived by Defendants from U.S. sales of such shoes to date. *See A.V. by*

*Versace, Inc.*, 2002 U.S. Dist. LEXIS 16323, at *35-36 (ordering contemnor to produce a similar statement prepared by an independent CPA).

It is also well-settled that "the district judge sitting in equity is vested with wide discretion in fashioning a remedy" as a coercive sanction. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F. 2d 126, 130 (2d Cir. 1979). *See also N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F. 2d 854, 857 (2d Cir. 1984) ("A district court has broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions. Its determination will not be disturbed absent a clear showing of abuse of discretion." (citations omitted)).

Here, Defendants' contempt of the Court's Injunction evidences an arrogant and willful disregard of pediped's trade dress rights and the Injunction. Defendants never stopped the exact conduct that this Court prohibited in its Injunction.

As a result, in order to coerce future compliance (as well as to compensate pediped), it is also well within the broad scope of discretion of the Court to levy a fine against Defendants payable to pediped in the amount of $1,000 for each day that Defendants' noncompliance continues. *See Perfect Fit*, 673 F. 2d at 57 ("the overriding consideration is whether the coercive fine was reasonably set in relation to the facts and was not arbitrary"); *N.A. Sales Co.*, 736 F. 2d at 857-58 (finding that, given defendant's "callous indifference to its obligations under the order," "[t]rebling N.A.'s damages [to $141,000] was thus reasonably calculated to ensure future compliance"); s*ee also Manhattan Indus., Inc.*, 885 F. 2d at 5 ("where the relief provided in a contempt proceeding is a fine, 'it is remedial when it is paid to complainant'").

Finally, given the willful nature of Defendants' contempt, Pediped is entitled to an award of its costs and attorneys' fees, to be demonstrated by a Declaration of Counsel, incurred in

investigating, policing, and enforcing the PI Order and in preparing this Motion for Civil Contempt, Equitable and Monetary Sanctions, and Expedited Discovery. *See Weitzman*, 98 F. 3d at 719 ("[T]o survive review in this court, a district court having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs [and fees] of the victim of contempt."); *A.V. by Versace, Inc.*, 2002 U.S. Dist. LEXIS 16323, at *36-37 (awarding plaintiff its attorneys' fees and costs for bringing motion against defendant's willful contempt in a trademark case).

### D.    Expedited Discovery Is Warranted.

Expedited discovery is appropriate in connection with contempt proceedings to bring facts concerning the violation to light. *See SEC v. Zubkis*, No. 97 Civ. 8086 (JGK), 2003 U.S. Dist. LEXIS 16152 at *20 (S.D.N.Y. Sept. 10, 2003) (finding defendant in civil contempt for failing to pay a disgorgement order and authorizing plaintiff to continue to conduct expedited discovery with respect to defendant's assets); *Pharm. Soc. of New York, Inc. v. Cuomo*, 774 F. Supp. 826, 828 (S.D.N.Y. 1991) ("At a hearing held before me on September 19, 1989, the State was found to be in contempt of the Stipulation and 1988 injunction. I further ordered expedited discovery . . . in order to determine which State officials were responsible for the contempt."), *aff'd in part, rev'd in part sub nom. Still's Pharmacy, Inc. v. Cuomo*, 981 F.2d 632 (2d Cir. 1992).

The standard for granting discovery as to contempt is not stringent. "To obtain discovery based on allegations of civil contempt, [the aggrieved party] must make a *prima facie* showing that a court order has been disobeyed." *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 256 F. Supp. 2d 228, 229 (D. Del. 2003). As demonstrated above, pediped certainly has established a *prima facie* case that Defendants have disobeyed the Court's Injunction.

Accordingly, Pediped is entitled to discovery with respect to Defendant Buell concerning the exact nature and full extent of Defendants' violations of the Court's Injunction, as well as regarding pediped's underlying claims of trade dress infringement, unfair competition and dilution.

In addition, discovery should proceed on an expedited basis pursuant to Fed. R. Civ. P. 26(d), 33(b)(2), and 34(b)(2)(A). At times, this Court has followed *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), in setting forth the test for whether expedited discovery is warranted as follows: (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *E.g., Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990). More recently, this Court has also used the more "flexible standard of reasonableness and good cause" to assess applications for expedited discovery. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005). Each test is satisfied here.

In the present case, Defendants' contemptuous disregard of the Court's Injunction strikes at the heart of pediped's business, and causes incalculable, ongoing and irreparable damage to pediped. This Court has already recognized the irreparable nature of injury to pediped absent Defendants' compliance with the Injunction. (Ex. 1, 13:25-14:4; *see also* p. 8 *supra*.)

Moreover, given the facts already before the Court, pediped more than meets the minimal standard of a mere "probability" of success on the merits. Indeed, in issuing its Injunction the Court has already necessarily held that pediped has made a clear and substantial showing of likelihood of success with respect to its trade dress infringement claims. (Ex. 1, 14:4-8.)

Without expedited discovery, it may be impossible to determine the exact nature and full extent of Defendants' violations of the Injunction, and to stop the continuing irreparable damage to pediped caused by Defendants' violations. Given Defendants' past misrepresentations, lack of candor and evasiveness during prior protracted settlement discussions (*see generally* Wilcox Decl.), it is essential that pediped have the opportunity to review documents and depose witnesses under cross-examination to be assured of the facts of Defendants' violations. Since Defendants are obligated to provide discovery anyway, the consequent harm to pediped without expedited discovery far outweighs any additional burden to Defendants if discovery simply is expedited.

The discussion above likewise shows the good cause for and reasonableness of pediped's request for expedited discovery. *See Ayyash*, 233 F.R.D. at 327. This more flexible standard is frequently met "in cases involving claims of infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

## IV.    CONCLUSION

For the foregoing reasons, pediped respectfully requests that the Court grant the present Motion in its entirety.

Respectfully submitted,

BAKER & HOSTETLER LLP

Dated:    New York, New York
          August 1, 2008

By: /s/ Thomas A. Canova
Thomas A. Canova (TC 7270)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200 – phone
(212) 589-4201 – fax
Attorneys for the Plaintiff
pediped Infant Footwear LLC

# EXHIBIT #1

```
                                                            1
        86jepedc
  1     UNITED STATES DISTRICT COURT
  1     SOUTHERN DISTRICT OF NEW YORK
  2     ------------------------------x
  2
  3     PEDIPED INFANT FOOTWEAR, LLC,
  3
  4                   Plaintiff,
  4
  5            v.                              08 CV 3572(LTS)
  5
  6     KUDOS LEATHERGOODS, LTD, doing
  6     business as Jack and Lily,  et
  7     al.,
  7
  8                   Defendants.
  8
  9     ------------------------------x
  9
 10                                           June 19, 2008
 11                                           10:40 a.m.
 11
 12
 12     Before:
 13
 13                      HON. LAURA TAYLOR SWAIN,
 14
 14                                       District Judge
 15
 15                          APPEARANCES
 16
 16     BAKER & HOSTETLER, LLP
 17          Attorneys for Plaintiff
 17     BY:  THOMAS A. CANOVA
 18          DEBORAH A. WILCOX
 18
 19
 19
 20
 20
 21
 22
 23
 24
 25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

86jepedc
1          (In open court)
2          THE COURT:  So we're here on the application for
3  preliminary injunction in connection with the order to show
4  cause that was issued in Pediped v. Kudos.  Counsel, would you
5  each introduce yourselves.
6          MR. CANOVA:  Yes, your Honor.  Good morning, your
7  honor.  Tom Canova from Baker Hostetler for the plaintiff.
8          And with me today is my partner from Cleveland,
9  Deborah Wilcox.
10          MS. WILCOX:  Good morning, your honor.
11          THE COURT:  Good morning, Ms. Wilcox.  Welcome.
12          MS. WILCOX:  Thank you.
13          THE COURT:  You can be seated.  And I see we have lots
14  of shoes as well in colorful boxes.
15          And so just to confirm where we are with respect to
16  the service of the order to show cause and preliminary
17  injunction papers, Ms. Wilcox, Mr. Canova, will you describe
18  for the Court what you did to serve the papers; what, if any,
19  response you've had; and what you filed in terms of
20  documentation.
21          MS. WILCOX:  Sure, your Honor.
22          On June 5th we served the counsel who we have been
23  speaking with for the defendants, their Canadian lawyers, and
24  we served them with all of the pleadings that had been filed.
25  And we have a certificate of service that we created.  And that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

86jepedc
1   was on June 5th, 2008.
2               For the record, I can read into -- the list of the
3   various documents that we served them with.
4               THE COURT:  That's not necessary.  Your representation
5   is that it was the order to show cause and the preliminary
6   injunction application papers?
7               MS. WILCOX:  Correct.
8               THE COURT:  Plus the original pleadings, a summons,
9   the amended complaint then?
10              MS. WILCOX:  Yes.  And we had also, and have now
11  perfected service through the Hague convention of the amended
12  complaint, as well as the original complaint.  We also then
13  notified the same counsel for defendants of the time change for
14  this hearing, and we did that on Friday, June 13th.  And we
15  also notified the defendants themselves, in addition to their
16  Canadian lawyers.
17              THE COURT:  And by what means of communication did you
18  provide the notices to the Canadian lawyers and the defendants?
19              MS. WILCOX:  That was done by e-mail, your Honor.
20              THE COURT:  And have you had any communication with
21  the Canadian lawyers or with the defendants themselves since
22  service of these papers?
23              MS. WILCOX:  Yes, we have.  We received some e-mails
24  last week from the Canadian lawyer indicating that he wanted to
25  see if there was still any settlement possibility.  At that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

86jepedc
1   time our settlement offers had been withdrawn.  We were not
2   able, unfortunately, to reach a settlement after about six
3   weeks of working on it.
4           And I'll let Mr. Canova speak, because we did hear
5   last night from US lawyer who had not been retained, but I'll
6   let Mr. Canova talk about that.
7           MR. CANOVA:  Yes, your Honor.
8           Last night at about 5:00, I received a call from an
9   attorney in a Washington, DC law firm who said he was calling
10  on behalf of the defendants, although he had not been retained
11  by the defendants, and he simply asked if there was any
12  possibility of obviating today's hearing.  At that late hour I
13  wasn't sure I'd be able to get ahold of anyone.
14          I asked him -- ultimately we did run it up the
15  flagpole with our clients and managed to get back in touch with
16  him at his home last night and proposed that his client
17  consider consenting -- well, his nonclient consider consenting
18  to the preliminary injunction that we are seeking today.  And
19  on that basis we would be willing to call chambers and seek at
20  least an adjournment of today's hearing.
21          Later that evening I received a call back with a
22  proposal of all kinds of conditions for us to receive any
23  consent to a preliminary injunction in any form.  And by that
24  point it was, I think, too late in the evening even to find our
25  own clients.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

86jepedc
1        But based on everything I had seen from weeks of
2    negotiations, it seemed pretty clear to me that there would be
3    no such agreement to a consented preliminary injunction.
4        THE COURT:  All right.  That also ultimately serves to
5    confirm that the -- not only was the service through the
6    lawyers received but noticed, and that the client of the
7    defendant has been in the loop and thoughtful about a reaction
8    to this.  So --
9        MR. CANOVA:  Indeed, the earlier communications
10    directly between the Canadian attorneys and Ms. Wilcox
11    reflected very clearly that the Canadian attorneys and the
12    defendants themselves were very well aware not only of the
13    originally scheduled hearing today, but also of the change of
14    time from I think it was 5:00 or 5:30 to 10:30 this morning.
15    And that was at least as of about a week ago.
16        MS. WILCOX:  Correct.
17        THE COURT:  Thank you.
18        Now, I have reviewed your papers, and I find that they
19    are sufficient to support the grant of relief.  I have some
20    issues with the form of order that you proposed, and I have a
21    proposal for addressing my issues in the form of a draft order
22    that modifies to a certain extent the originally proposed draft
23    and also contemplates the annexation of certain exhibits to the
24    order to get a little bit more context and concreteness to some
25    of the terms of art and some of the more conceptual aspects of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

86jepedc
1    the description of the products.
2             The one, if raised, that, frankly, I could not get
3    comfortable with is an overall look that's more sophisticated
4    and adult like than other infant footwear.  So you will not see
5    that phrase in my draft, but you will see that the draft
6    contemplates the annexation of an Exhibit A, which is your
7    exhibit of pictures of the particular styles of the defendants'
8    shoes that you're seeking to have restrained here.  And I note
9    for the record that those appear to be the toddler type shoes
10   with the straps that look like the Pediped shoes and not the
11   infant shoes that are sort of softer and don't have straps and
12   heels and that sort of thing.
13            It also contemplates an Exhibit B, which would be
14   images -- an image or images of Pediped's shoes illustrating
15   the characteristics that are described in your Exhibit A -- I
16   mean, in your paragraph A, such as the asymmetrical rounded
17   boxy and formed look.
18            And then finally, an Exhibit C that would be an
19   illustration of your box and the characteristics of the box.
20            So I'm going to ask that Mr. Young give you a copy to
21   review and let me take a few minutes to review it.  I have a
22   copy here.  He has one, too.  And then we can talk about
23   whether this form of order would be acceptable to you and
24   whether you can supply the things that it contemplates.  And
25   then we'll go back to the merits on the record.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

86jepedc

1      MS. WILCOX:  Thank you, your Honor.
2      (Pause)
3      THE COURT:  I'll also just note that at the end of the
4  paragraph B, we had added the reference to what we characterize
5  as a cloth carrying handle on the top of the box.
6      MS. WILCOX:  Your Honor, this looks acceptable to us.
7  And one thing that we would ask to clarify is that the box that
8  Jack and Lily uses be also depicted as an exhibit.  And maybe
9  it could still be part of A so that the box itself is also
10 enjoined.
11     THE COURT:  And so what -- tell me how you would
12 propose to modify the language, because I suppose in a way
13 they're selling the box, but when you're referring to products,
14 you were referring to products in the context of pictures of
15 shoes.  So can you help me with some language there?
16     MS. WILCOX:  Right.  The products -- okay.  So we
17 have -- in that second to last line in this paragraph,
18 attempting to sell or resell the products, including without
19 limitation as packaged -- and maybe the products identified in
20 Exhibit A here -- to including without limitation as packaged
21 in -- either also depicted in Exhibit A, or we can make a new
22 exhibit that just has the packaging.  So let me try to work on
23 this.
24     THE COURT:  Let's see.  We were enjoining them from
25 manufacturing, advertising, offering for sale, selling,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

86jepedc
1   distributing, marketing, transporting, delivering or in any way
2   attempting to sell or resell the products -- products and
3   packaging identified in Exhibit A hereto, if you'll provide an
4   illustration of the packaging.
5           MS. WILCOX:  I think that works, your Honor.  Thank
6   you.
7           THE COURT:  And any products or packaging embodying
8   the packaged and trade dress.
9           MS. WILCOX:  Right.
10          THE COURT:  And as you'll see, I included a provision
11  for security in accordance with Rule 65.
12          All right.  Then so you'll be able to supply color
13  copies of the appropriate illustrations?
14          MS. WILCOX:  Yes, your Honor.
15          MR. CANOVA:  Yes.
16          THE COURT:  All right.  So you can be in communication
17  with Mr. Young about how to do that, and we'll finalize the
18  order once we have the necessary exhibits.
19          One other suggestion that we have is that the
20  illustration of the box include an illustration of the back of
21  the box as well, since the description of the prohibited
22  characteristics includes reference to logo and back of the box.
23  All right.
24          Now, I will make my ruling on the record.  This
25  constitutes the Court's findings of fact and conclusions of law

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

86jepedc
1   for purposes of Rules 52 and 65 of the Federal Rules of Civil
2   Procedure and is made on the basis of the written submissions
3   provided to the Court and served on defendants in connection
4   with the application for the order to show cause and
5   preliminary injunction, as well as the additional proffers by
6   way of exemplars of the boxes and shoe products presented here
7   in court today.
8            Pediped seeks preliminary injunctive relief on its
9   trade dress infringement claims asserted under the Lanham Act
10  and New York law.  In the Second Circuit, the standard for a
11  preliminary injunction requires that in order to obtain such
12  relief, the moving party must show that it is likely to suffer
13  irreparable injury and either a likelihood of success on the
14  merits of its case or sufficiently serious questions going to
15  the merits to make them a fair ground for litigation and a
16  balance of hardships tipping decidedly toward the party
17  requesting the preliminary relief.  See Jackson Dairy, Inc., v.
18  HP Hood and Sons, Inc., 596 F.2d 70 at page 72, which is a 1979
19  Second Circuit decision.
20           Whereas here the moving party is seeking a mandatory
21  injunction -- that is, an injunction that will alter rather
22  than maintain the status quo -- the moving party must make a
23  clear or substantial showing of a likelihood of success.  The
24  alternative prong relating to sufficiently serious questions
25  going to the merits and a balance of hardships does not apply

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

86jepedc
1   in such a situation.  And here the plaintiff must meet the
2   higher standard because it is seeking an injunction that will
3   alter the status quo by precluding the sale of the accused
4   products pending resolution of the claims for injunctive
5   relief.  And the citation for the higher standard is Jolly v.
6   Coughlin, 76 F.3d 468, at page 473, Second Circuit 1996.
7            Under Section 43(a) of the Lanham Act and New York
8   common law, trade dress infringement is established if
9   plaintiff proves that the trade dress is distinctive as to the
10  source, there is a likelihood of confusion between plaintiff's
11  and defendant's products and the trade dress is nonfunctional.
12  Under federal law plaintiff may demonstrate distinctiveness if
13  its products have acquired secondary meaning.
14            The Court finds that plaintiff has made a clear and
15  substantial showing of a likelihood of success at this stage of
16  the litigation with respect to its trade dress infringement
17  claims.  The unrefuted declarations proffered in support of the
18  application for preliminary injunctive relief indicate that
19  with respect to design, Pediped's shoes all have a highly
20  visible white hand stitching spaced to create a stylized ripple
21  effect around the entire shoe, a ruby toe box, a sole visually
22  small compared to the upper sole and a white sewn-in tag on the
23  end of the velcro strap.  These aspects of Pediped's products
24  are distinctive and unique, such that the products sold by
25  defendants that have these characteristics have confused

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

86jepedc
1   vendors at trade shows who believed that defendant's products
2   were made by plaintiff.
3           The declaration of Angela Edgeworth and attached
4   exhibits proffered in connection with plaintiff's application
5   also support plaintiff's factual assertion that the packaging
6   of Pediped's shoes is unique and distinctive, consisting of a
7   purple box with a clear plastic window with the logo and tag
8   line situated above the plastic window with the tag line
9   printed in smaller font, a description of the product
10  positioned at the bottom of the box below the window and the
11  left and right sides of the box adjoining the window of equal
12  proportion to each other, the top portion of the box adjoining
13  the window more than twice the height of the bottom portion of
14  the box adjoining the window and a carrying handle on the top
15  of the box.  Therefore, there is a clear showing in this record
16  that plaintiff's products have a distinctive trade dress.
17          Now I'm going to stop for a minute and just ask a
18  question of plaintiff's counsel.  Is the Pediped handle always
19  a cloth handle?
20          MS. WILCOX:  I believe so, your Honor.  This is like
21  a -- sort of like a ribbon.  It's cloth.
22          THE COURT:  Mr. Young, can you get the box just so I
23  can see it more closely.
24          (Pause)
25          THE COURT:  I'm looking now at the purple Pedipeds box

12

86jepedc
1   which is marked as Plaintiff's Exhibit 2 for identification and
2   the pink Jack & Lily box which is marked as Plaintiff's
3   Exhibit 2A for identification.  And there is a cloth ribbon
4   handle on the Pedipeds box which is a structured box with a
5   cloth covering, a textured cloth covering.  And the plastic
6   window is like previously described.
7           The Court further finds that the unrefuted Edgeworth
8   declaration demonstrates substantial advertising expenditures,
9   $1 million in 2007 in aid of the marketing of the Pediped
10  products.  It also provides anecdotal evidence of customers
11  recognizing the source of Pediped shoes solely by their
12  distinctive look, and it attests to significant sales success
13  indicating that the company started around 2004, sold its
14  products in 350 stores within a year and that its products are
15  now being sold in 3,000 stores worldwide.
16          That declaration also attests to unsolicited media
17  coverage in the form of various awards, examples of other
18  competitors attempting to copy Pediped's design and plaintiff's
19  use of its unique design for several years.
20          On the basis of this record, the Court finds that
21  plaintiff has made a clear and substantial showing of a
22  likelihood of success in demonstrating secondary meaning, which
23  is an alternate means of demonstrating distinctiveness.  See
24  Fundamental II, Ltd., the Gemmy Industries Court, 111 F.3d 993,
25  a 1997 Second Circuit case.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

86jepedc
```
 1                   The Court further finds that the record establishes a
 2       clear and substantial showing of the likelihood of confusion
 3       between plaintiff's and defendant's products based on the
 4       photographed exhibits of defendant's products, which have been
 5       proffered to the Court.  Those photographs indicate that the
 6       defendant's products displayed the aforementioned distinctive
 7       elements of plaintiff's designs.
 8                   I have also had the opportunity to view more closely
 9       an example -- I'm just trying not to rip this box here.  I got
10       the box -- in Plaintiff's Exhibit 2A, an example of the
11       defendant's shoes and this particular shoe -- trying to find --
12       I don't think the name of the shoe -- it's a white sandal, a
13       small, white sandal.  It does have a strap that closes with
14       velcro, a small white tag on the end of that strap that says J
15       and L.  It has the sole that is stitched in order to produce
16       the scalloped effect around the sides, the boxy effect in the
17       toe box and the other characteristics that have been described
18       in connection with the plaintiff's shoes earlier in this oral
19       decision.
20                   The record also provides anecdotal evidence of actual
21       confusion as to the source of the defendant's products.  The
22       similarity of the two product lines also raises a strong
23       inference of bad faith on defendant's part.  The record also
24       supports the element of nonfunctionality of the trade dress.
25                   Because the nature of trade dress infringement
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

86jepedc
1   necessarily results in irreparable harm to the entities whose
2   trade dress is being infringed, the Court also finds that the
3   plaintiff will suffer irreparable harm absent a preliminary
4   injunction.  The Court finds that the plaintiff has
5   demonstrated the requisite substantial likelihood of success in
6   showing that the defendant's products listed in attachment A to
7   Exhibit 1 of the order to show cause infringed plaintiff's
8   trade dress.
9           The Court further finds that the packaging of
10  defendant's products as in the exemplar Plaintiff's Exhibit 2A
11  also infringed the trade dress of the packaging of plaintiff's
12  products, and that enjoining the defendant from selling or
13  distributing such products or packages, packaging is
14  appropriate at this stage.
15          For all of these reasons the Court will enter a
16  preliminary injunction order enjoining the defendants and those
17  acting in concert with them who receive notice of the order
18  pending the final resolution of the claims for injunctive
19  relief in this case from selling, manufacturing or distributing
20  the products identified in what will be Exhibit A to the order.
21  And that is the attachment A, plus an illustration of the
22  packaging.  And from manufacturing, distributing or selling any
23  products embodying or packaged in trade dress comprising a
24  substantial portion of the specific elements of the unique
25  trade dress of plaintiff's products, which will be described

15

86jepedc
1  with some specificity in the order as well as illustrated in
2  attachments to that order.
3              And that concludes my oral decision on the application
4  for preliminary injunction.  And so, Ms. Wilcox and Mr. Canova,
5  you will work with Mr. Young to get him exhibits for the order.
6              Now, what we can do is simply agree on the
7  recommendations to the draft that I've provided so that you can
8  go back and put that on your system and give us complete copies
9  with the exhibits attached, and that would, frankly, be helpful
10 to me.  And so the changes that I have are on the first page in
11 the third to last line, which is the line that begins
12 "attempting to sell or resell," inserting after the word
13 "products" the word "and packaging," and then toward the end of
14 that line, after the second occurrence of the word "products,"
15 inserting the words "or packaging."
16             And then in the third to last line of the body of the
17 order, which is the line relating to the posting of security in
18 the amount of 25,000, I would just ask you to put the full word
19 three and the number three in parens at the end of that
20 sentence, instead of simply the number three.
21             And with those changes, I think we've caught all the
22 little things that were necessary to catch.  So the clerk's
23 minute will reflect that an oral decision was read into the
24 record and that plaintiff is to submit an order.
25             Is there anything else that we need to talk about

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

86jepedc
1    today this morning?
2            MS. WILCOX:  Your Honor, there is one other thing.
3            We anticipate that we may need to move for a default
4    judgment.  And we would ask that you permit us to do so without
5    going through additional process.  I know you have a
6    requirement of sending a letter to the other side, but I think
7    that anticipates a case where there has been no communication
8    with the defendants.
9            So we would just like to, if possible, speed up the
10   process a bit and be able to have the clerk enter a default at
11   the appropriate time and to then move for a default judgment.
12           THE COURT:  My process isn't particularly slow, and I
13   don't think you're yet in a position to have a certificate of
14   default issued in respect of the amended complaint, which would
15   be the operative pleading at this point.
16           And so I would just suggest that you be ready with
17   your letter at the appropriate time.  It doesn't take me long
18   to issue an order, but that gives the -- it is essentially a
19   last clear chance procedure.  And so by reason of the sending
20   of the letter, then service of the order that I will issue
21   authorizing the default judgment application ensures that the
22   defendant has some clear notice and opportunity to offer any
23   viable defense that it may have or application for relief from
24   default before the full-blown default judgment application is
25   served.  But none of it's that complicated or time consuming.

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

17

86jepedc

 1          MS. WILCOX:  Well, thank you, your Honor.  We
 2     appreciate that, and of course we'll follow your rules.
 3          Thank you.
 4          THE COURT:  All right.  Thank you very much.  It's
 5     good meeting you, Ms. Wilcox.
 6          Good seeing you, Mr. Canova.
 7          MR. CANOVA:  Thank you, your Honor.
 8          THE COURT:  And we are adjourned.
 9          (Adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT #2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEDIPED INFANT FOOTWEAR LLC,

        Plaintiff,

        v.

KUDOS LEATHERGOODS LTD d/b/a
JACK AND LILY and ROBERT THOMAS
BUELL, Individually,

        Defendants.

CASE NO. 08-CIV-3572 (LTS)

**CLERK'S CERTIFICATE**

    I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on April 14, 2008, with the filing of a summons and complaint; a copy of the summons and complaint was served on Defendant Kudos Leathergoods Ltd d/b/a Jack and Lily ("J&L") by hand delivery to Robert Thomas Buell at 720 Alexander Street, Vancouver, British Columbia, on April 25, 2008; proof of such service thereof was filed on May 10, 2008; an amended complaint in this action was filed on May 23, 2008; a copy of the amended complaint was served on J&L by hand delivery to Yang Ngng Leong at 720 Alexander Street, Vancouver, British Columbia, on June 9, 2008; and proof of such service thereof was filed on June 20, 2008.

    I further certify that the docket entries indicate that J&L has not filed an answer or otherwise moved with respect to the complaint or amended complaint herein. The default of the

defendant Kudos Leathergoods Ltd. d/b/a Jack and Lily is hereby noted.

Dated:   New York, New York
         June 27, 2008

                                        **J. MICHAEL MCMAHON**
                                        Clerk of the Court

                              By:_____
                                        Deputy Clerk