**BAKER & HOSTETLER LLP**
Thomas A. Canova (TC 7270)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Deborah A. Wilcox (Ohio Bar No. 0038770)
3200 National City Center
1900 East 9th Street
Cleveland, OH 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Attorneys for Plaintiff
pediped Infant Footwear LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDIPED INFANT FOOTWEAR LLC, | CASE NO. 08-CIV-3572 (LTS) |
| Plaintiff, | |
| v. | |
| KUDOS LEATHERGOODS LTD d/b/a JACK AND LILY and ROBERT THOMAS BUELL, Individually, | |
| Defendants. | |

**PLAINTIFF'S REPLY AND SUPPLEMENTAL EVIDENCE IN SUPPORT OF MOTION
FOR CIVIL CONTEMPT, EQUITABLE AND MONETARY SANCTIONS, AND
EXPEDITED DISCOVERY**

**HEARING DATE: SEPTEMBER 5, 2008**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................... 1

II. STATEMENT OF FACTS .............................................................................. 3

    A.  Defendant Buell's Personal Involvement in Violating the Injunction ................... 3

    B.  The Newly "Redesigned" Shoes and Packaging ...................................... 5

III. ARGUMENT ...................................................................................... 5

    A.  Defendants Are in Contempt of the Court's Preliminary Injunction ................... 5

        1.  Defendants Have Not Been Reasonably Diligent and Energetic in Attempting to Accomplish What Was Ordered in the Court's Preliminary Injunction ............................................................ 6

    B.  In Opposing This Motion, Defendant Buell Cannot Attack the Validity of the Court's Order ........................................................................... 8

    C.  Defendants' "Redesigned" Shoes and Packaging Are Not a Safe Distance Away from Pediped's Trade Dress ...................................................... 9

IV. CONCLUSION .................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, No. 81 Civ. 0093 (CSH), 1990 U.S. Dist. LEXIS 9059 (S.D.N.Y. July 23, 1990) ..................................................................................... 5

*Galella v. Onassis*, 533 F. Supp. 1076 (S.D.N.Y. 1982) ............................................................. 8

*GMA Accessories, Inc. v. Eminent, Inc.*, No. 07 Civ. 3219 (LTS)(DF), 2008 U.S. Dist. LEXIS 55107 (S.D.N.Y. May 29, 2008) ................................................................................................. 9

*N.A. Sales Co. v. Chapman Indus. Corp.,* 736 F. 2d 854 (2d Cir. 1984) ...................................... 8

*Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320 (9th Cir. 1997) ...................................... 9

## I.    PRELIMINARY STATEMENT

Plaintiff pediped Infant Footwear LLC ("pediped") submits this reply memorandum and the accompanying Declarations of Brad Levy ("Levy Decl."), Rudy Glocker ("Glocker Decl.") and Donald Ticknor ("Ticknor Decl.") to counter the claims made by Defendant Robert Thomas Buell (Defendant "Buell")[1] in opposition to pediped's motion for civil contempt, equitable and monetary sanctions, and expedited discovery (the "Opposition").

Defendant Buell's Opposition is typical of his attitude and conduct throughout this dispute. Defendant Buell shows his disrespect for the serious measures the Court has taken to protect pediped from irreparable harm through the clear injunction by characterizing the repeated shipment of shoes as "a minor, inadvertent violation." (Defendant's Memorandum in Opposition at p. 1 ("Def's Mem. Opp'n) (Dkt. No. 45)). Moreover, while one hand paints pediped's justified reluctance to take Defendant Buell at his word as a "total lack of good faith" (Def's Mem. Opp'n 1), the other hand corrects the faulty information on which Defendant Buell would have had pediped rely in resolving the violation of the injunction informally (Decl. of Robert T. Buell ¶¶ 3-4 (Dkt. No. 47)). Through his counsel, after a week of checking into the violations of the injunction, Buell informed pediped that only 5 shipments consisting of 38 pairs of the subject shoes in the subject packaging had been shipped in violation of the injunction. Now, in his Opposition papers, Buell more than doubles that number to 80 pairs of shoes (while not disclosing the number of shipments). Each shipment undoubtedly contained a brochure offering the full line of enjoined products for sale. Beyond filling all those orders, Buell had his right-hand man offer to ship the entire inventory of the subject products to a customer, Mr. Levy.

---

[1] Defendant Kudos Leathergoods Ltd d/b/a Jack and Lily (Defendant "Kudos") is in default for failing to appear in this proceeding and has not attempted to set aside its default to oppose the present motion.

Having no substantive rebuttal, Defendant Buell resorts to name-calling, claiming he should not be held in contempt because the parties should have settled the dispute. He conveniently forgets that at the beginning of the parties' settlement negotiations, pediped offered to make Defendants whole by buying their entire inventory of the infringing My Shoes.[2] Buell said, though, that the inventory had all been sold. (Decl. of Deborah Wilcox ¶ 5 (Dkt. No. 39)). That was not true. He later said that 1,000 pairs were still for sale (Wilcox Decl. Ex. A, Seema Lal May 5 email to Deborah Wilcox), and still later, as set forth below, faxed a customer a list of over 2,000 pairs for sale as of July 24 (Levy Decl. ¶ 10, Ex. A). It is now clear that since April, Defendants have been biding time to continue to sell the infringing products and gain a foothold in the market, as they continued to do so even after the injunction. Pediped is confident that Defendant Buell's tactics will not distract the Court from Defendants' inexcusable disregard for a duly-ordered, simple prohibition.

Even crediting Defendant Buell's questionable and self-serving claim that he gave an oral direction to one of his employees to not ship any of the enjoined products, he has fallen far short of a reasonably diligent and energetic attempt to comply with the injunction. That was all he claims to have done, and it did not work. Moreover, since this employee had full authority to send emails in Buell's name, the employee's violations prove that Defendant Kudos is in contempt.

There are new facts that also support pediped's contempt motion. Buell directs the Court to the jackandlily.com website to see the newly "redesigned" shoes and packaging--but those

---

[2] Pediped worked hard to resolve this matter amicably, to the tune of tens of thousands of dollars spent in attorneys' fees, over a 6-week period, negotiating terms, drafting settlement documents, looking for creative resolutions, etc. Pediped engaged in protracted conversations with four different attorneys for Defendants, the most recent of which, Attorney Hanlon, being the only one not designated as "settlement counsel," and who does not know the history of the negotiations.

shoes are not a safe distance from the infringing shoes. The packaging is not a safe distance. The website continues to display the infringing shoes in the infringing packaging. Defendants did not even bother changing the name of the line or giving each product a new style number. Defendants plainly intend to continue to profit from the foothold they have already obtained in the marketplace through selling the infringing shoes.

Defendants are in willful contempt of the Court's order, and the relief pediped requests is no more onerous than is necessary to remedy the situation.

## II.    STATEMENT OF FACTS

Most of the facts pertinent to this motion are summarized in pediped's initial brief (Dkt No. 42). The facts set forth herein are offered in rebuttal to Defendant Buell's Opposition and where noted, supplemental facts based on new evidence that has come to light since the filing date of pediped's Motion.

### A.    Defendant Buell's Personal Involvement in Violating the Injunction

In late spring of 2008, the owner of Shoe Box, Brad Levy, called Kudos and spoke to Defendant Buell regarding "pediped-looking" shoes. (Levy Decl. ¶ 3.) Buell told Mr. Levy that he had new designs and that he had shoes in stock. (Levy Decl. ¶ 3.) Mr. Levy placed two orders for My Shoes in May, and the person to whom he talked mentioned there was plenty of inventory and more coming in shortly. (Levy Decl. ¶¶ 4-5.)

On June 30, Mr. Levy called Kudos and spoke to a man named Yang. (Levy Decl. ¶ 6.) He stated there were "no more My Shoes" and that he "ran out of inventory" and to "call back in 2 weeks." (Levy Decl. ¶ 6.)

On July 5, Mr. Levy called Kudos back and spoke to a man named Alvin. (Levy Decl. ¶ 7.) He told Mr. Levy that Kudos was "redesigning the shoes" and that the "new shoes would be available in a month." (Levy Decl. ¶ 7.) Mr. Levy indicated that he wanted to re-order the shoes

Kudos had shipped to him before and wanted to get more of the "My Shoes." (Levy Decl. ¶ 7.) Alvin told him that the new shoes were "very similar" and "barely any different at all." (Levy Decl. ¶ 7.) Alvin also said, "I will see what I have," which Mr. Levy took to mean Alvin would see what inventory was on hand of the original My Shoes designs Mr. Levy had previously purchased. (Levy Decl. ¶ 3.)

On July 23, Mr. Levy called Kudos and again spoke to Alvin. (Levy Decl. ¶ 8.) He said he remembered dealing with Mr. Levy a few years ago and selling him a lot of goods. (Levy Decl. ¶ 8.) Mr. Levy asked to speak to Buell, and Alvin put Mr. Levy on the phone with Buell. (Levy Decl. ¶ 8.) Buell said pediped was bullying him about his design so he needed to change his styling, but that in a week or so, he would have "a new design with a rubber sole." (Levy Decl. ¶ 8.) Mr. Levy objected to those shoes and asked that Buell send him more of the original My Shoes. (Levy Decl. ¶ 8.) Buell told him that the shoes are "very similar, barely any change" or words to the effect that they were "almost the same." (Levy Decl. ¶ 8.) **Buell then said, "let me see what I have."** (Levy Decl. ¶ 8.) Mr. Levy asked Buell to fax him an inventory of his remaining My Shoes styles as Mr. Levy wanted to purchase them and had customers waiting. (Levy Decl. ¶ 8.) Mr. Levy also mentioned how he was misled last month by representations that there was "plenty of inventory" and "more coming." (Levy Decl. ¶ 8.)

Mr. Levy then received a follow up call from Alvin, who said he was instructed by Buell to fax Mr. Levy the inventory list. (Levy Decl. ¶ 9.) In response to this conversation, on July 23, 2008, Mr. Levy received a fax from "Kudos: Jack and Lily" (sent to three of his different fax numbers: his home, his Newport store and his Henderson store) consisting of a chart labeled "Current Stock". (Levy Decl. ¶ 10, Ex. A.) The chart shows over 2,100 pairs of shoes in stock. (Levy Decl. ¶ 10, Ex. A.) Mr. Levy called Alvin back about ordering from this inventory list,

and he said he would ship Mr. Levy the shoes. (Levy Decl. ¶ 10.) While Alvin called Mr. Levy later on July 24 to say that he could not ship the shoes because of a problem with pediped, Alvin reiterated that he would have new shoes in shortly. (Levy Decl. ¶ 10.)

In addition, the COO of pediped, Rudy Glocker, recently found a personal note signed by Defendant Buell enclosed with his shoe order, purporting to congratulate Mr. Glocker on his new position. (Glocker Decl. Ex. E.) Plainly Buell's direct involvement in shipping product to the U.S. is more than he acknowledged in his Opposition.

### B.    The Newly "Redesigned" Shoes and Packaging

Just as Defendants represented to Mr. Levy, the "redesigned" My Shoes are nearly identical to those subject to the preliminary injunction. (*See* Glocker Decl. Exs. A, C; *compare* Ticknor Decl. Ex. A, *with* Decl. of Angela Edgeworth Ex. 1 (Dkt. No. 13-1), Ex. 20 (Dkt. No. 13-8).) Many of the "redesigned" shoes still have a black sole and highly visible white stitching; a profile which creates an asymmetrical, rounded-boxy and formed look; a roomy toe box; a sole visually small compared to the upper; and a white sewn-in tag on the end of a Velcro strap.

The only change Defendants have made to their My Shoes packaging is to make the plastic window circular instead of rectangular. It continues to copy all other aspects of pediped's trade dress.

## III.    ARGUMENT

### A.    Defendants Are in Contempt of the Court's Preliminary Injunction.

Defendant Buell has not controverted pediped's clear and convincing proof that he has not been reasonably diligent and energetic in attempting to accomplish what was unambiguously ordered by this Court. Under *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, No. 81 Civ. 0093 (CSH), 1990 U.S. Dist. LEXIS 9059, at *17-18 (S.D.N.Y. July 23, 1990), Buell should be held in contempt.

Defendant Buell expressly admits that in an untold number of transactions, 80 pairs of the enjoined shoes, in the enjoined packaging, were shipped into the U.S. in violation of the preliminary injunction. (Buell Decl. ¶¶ 3-4.) The shipments included a brochure featuring the entire line of enjoined products for sale. His "redesigned" shoes and packaging continue to copy pediped's trade dress.

Nowhere in Defendant Buell's Opposition is it suggested that the Court's order was anything but clear and unambiguous. Nor do his allegations demonstrate a reasonably diligent and energetic attempt to comply with the preliminary injunction.

> **1.    Defendants Have Not Been Reasonably Diligent and Energetic in Attempting to Accomplish What Was Ordered in the Court's Preliminary Injunction.**

Even crediting Defendant Buell's implausible and self-serving explanation of the violations, one cannot conclude that Defendants' attempt to prevent the shoes at issue from being sold into the U.S. was sincere, let alone reasonably diligent and energetic.[3] By his own account, Defendant Buell, in order to comply with the injunction, only orally communicated to one other person, Mr. Neng-Leong: "not to ship any of the 'My Shoes' collection to the United States." (Buell Decl. ¶ 3.) If there was such an instruction, obviously it did not suffice to prevent numerous shipments of the enjoined shoes, in the enjoined packaging, with brochures advertising the entire line of products enjoined from sale. Buell apparently said nothing to Mr. Koh, who was discussing selling shoes to customers over the phone. (Levy Decl. ¶¶ 7-9.) It is hard to imagine how an office of three people (Buell Decl. ¶ 2) could be so difficult to coordinate.

---

[3] The insincerity is not surprising. In trying to exact a settlement, Buell's counsel flat out said that pediped might be unable to enforce relief it would obtain from the New York Court against these Defendants because they were in Canada. This was hardly a good faith negotiation tactic; nor did it instill any confidence that Defendants would stop selling the infringing products.

There is no reasonable explanation for such a breakdown. The problem lies with Defendant Buell: his instructions were insufficient (if given at all) and he did not follow up sufficiently. First, Defendant Buell's claim that Mr. Neng-Leong is solely responsible for all of the shipments of enjoined products, and that Buell knew nothing about the shipments, is not credible. Buell claims that he has given Mr. Neng-Leong carte blanche to send emails in Buell's name (Buell Decl. ¶ 3). It is improbably convenient that in sharing a computer with Mr. Neng-Leong, Buell failed to notice what must have been many emails regarding shipping the enjoined products. As to Ms. Girouard alone, she sent four separate emails to Buell over a span of more than 20 days regarding her order on hold. Buell cannot credibly claim that he bears no responsibility for the actions of Mr. Neng-Leong in shipping numerous customers 80 pairs of enjoined shoes, in the enjoined packaging, with an enjoined brochure.

From the discussions that Mr. Levy had with Mr. Buell, Mr. Neng-Leong and Mr. Koh, it is clear that Mr. Buell knew that callers were asking for the infringing products and that until July 24, he did nothing to indicate that the products were not for sale. To the contrary, he had a list faxed to a customer of all remaining My Shoes for sale. Moreover, the personal note to Mr. Glocker shows that Mr. Buell has no trouble getting involved in the shipping process when he sees fit, in this case for the purpose of taunting pediped. (Glocker Decl. Ex. E.)

Second, Buell did nothing to follow up to ascertain whether Mr. Neng-Leong was carrying out the supposed oral instruction. Given that such follow up would have been as easy as a brief conversation, email, or note, Defendant Buell's failure to do so demonstrates his willful blindness to whether or not the injunction was being obeyed.

While Buell's meager oral instruction was neither diligent nor energetic, his inaction speaks loudest: he gave no instructions to anyone to segregate the subject products. He gave no

instructions to stop sending the brochure displaying the enjoined products to customers. He put nothing in writing. He apparently had no discussions with Mr. Koh, who was talking to customers about the enjoined products. He put up the new shoes and packaging on the website, using displays of the enjoined shoes in the enjoined packaging. As discussed below, his redesigned packaging is virtually identical to the enjoined packaging. His redesigned shoes still trade off the pediped trade dress. He did not cease using the "My Shoes" name for the "redesigned" products. He did not change the style numbers from those of the enjoined styles.

Plainly, Defendants have not been reasonably diligent and energetic in attempting to accomplish what was ordered in the preliminary injunction, and thus are in contempt.

**B.      In Opposing This Motion, Defendant Buell Cannot Attack the Validity of the Court's Order.**

Defendant Buell impermissibly seeks to argue the merits underlying the injunction, after having failed to appear or defend pediped's motion for injunctive relief. The law is well settled that Defendant Buell may not obtain reconsideration of the Court's preliminary injunction by disobeying it: "It is fundamentally axiomatic in law that a contempt hearing for violation of a prior court order is not an avenue of attack, collateral or otherwise, of that order." *Galella v. Onassis*, 533 F. Supp. 1076, 1096 (S.D.N.Y. 1982); *see also N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F. 2d 854, 857 (2d Cir. 1984) (finding, in a case involving both a preliminary and a permanent injunction, that the defendant's argument "challenges the validity of the injunction itself and has no place in a contempt proceeding").

The Court found pediped's proof sufficient to grant pediped preliminary relief. (*See* Hearing Transcript, June 19, 2008 (Dkt. No. 42 Ex. 1)). Buell cannot now excuse his noncompliance with that relief by challenging its validity.

**C.    Defendants' "Redesigned" Shoes and Packaging Are Not a Safe Distance Away from Pediped's Trade Dress.**

The "redesigned" shoes and packaging that Defendants' offer on their website (Ticknor Decl. Ex. A) likewise violate the preliminary injunction because they are not a safe distance away from pediped's trade dress.

A party who has been enjoined from use of certain trade dress may not rerelease the offending product with only minor changes even if the new version might have been lawful had the old version not infringed:

> [A]n infringer must keep a fair distance from the "margin line." . . . [Defendant] should not . . . be able to make minimal changes in its product in order to test the outer boundaries of [an injunction]; [Defendant] had a duty to stay well away from [Plaintiff]'s trademark:
>
> > [A trademark infringer] should have its conduct carefully scrutinized in future use and should not be allowed to claim the same leniency accorded a good faith user who starts use of the mark which the enjoined defendant has shifted to. Otherwise, the enjoined defendant could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to the use of the "new" format.

*Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1323 (9th Cir. 1997) (last alteration in original) (citation omitted) (quoting *McCarthy on Trademarks* § 30.13[1] (1996)); *see also GMA Accessories, Inc. v. Eminent, Inc.*, No. 07 Civ. 3219 (LTS)(DF), 2008 U.S. Dist. LEXIS 55107, at *16-17 (S.D.N.Y. May 29, 2008) (citing *Wolfard Glassblowing Co.*, 118 F.3d at 1322) ("When . . . the Court is only called upon to determine whether an injunction prohibiting certain trademark use has been violated . . . the only question for the Court is whether the defendant's use of a mark has fallen within the coverage of the injunction, as phrased.")

In this case, the Order Granting Preliminary Injunction (Dkt No. 21) bars Defendants from, among other things, advertising

any products or packaging embodying trade dress compromising a substantial portion of the following:

A.  with respect to design, a black sole with highly visible white hand-stitching, spaced to create a stylized rippled effect around the entire shoe; a profile which creates an asymmetrical, rounded-boxy and formed look; a roomy toe box; a sole visually small compared to the upper; and a white sewn-in tag on the end of the Velcro strap . . .

B.  with respect to packaging, a sturdy, purple, textured, and hinged box with a clear plastic window; the logo and tag line situated above the plastic window, with the tag line printed in smaller font; a description of the product positioned at the bottom of the box, below the window; the left and right sides of the box adjoining the window of equal proportion to each other; the top portion of the box adjoining the window more than twice the height of the bottom portion of the box adjoining the window, and the logo and company information on the back of the box, and a cloth carrying handle on the top of the box . . . .

Defendants' "redesigned" My Shoes footwear and packaging still has the same overall look and feel as pediped's soft-soled shoes and packaging.  (*See* Glocker Decl. ¶ 5, Exs. A-D; *compare* Ticknor Decl. Ex. A, *with* Decl. of Angela Edgeworth Ex. 1 (Dkt. No. 13-1), Ex. 20 (Dkt. No. 13-8).)  **Defendants play up the fact that the "redesigned" shoes are nearly identical to those subject to the injunction.**  (Levy Decl. ¶¶ 7-8.)  The "redesigned" shoes still comprise a substantial portion of pediped's trade dress, namely (1) a black sole and highly visible white stitching; (2) a profile which creates an asymmetrical, rounded-boxy and formed look; (3) a roomy toe box; (4) a sole visually small compared to the upper; and (5) a white sewn-in tag on the end of a Velcro strap.

In addition, several features of Defendants' style no. 181, for example (Glocker Decl. Ex. A),[4] remain identical to pediped's Samantha shoe, including the color combinations, tag, Velcro strap, and, to the lay person's eye, the shape of the shoe (Glocker Decl. ¶ 7).  Both shoes share highly similar features such as the pink strap and upper, brown back, cut-outs along the top

---

[4] Pediped reserves the right to comment on additional "redesigned" styles once it has examined samples of them.

portion of the shoe, and contrasted decorative stitching on brown leather in the front and back of the shoe. Defendants' "redesigned" shoe no. 181 continues to evoke pediped's Samantha shoe.

Defendants' failure to make any meaningful changes to the packaging is perhaps the most telling. The <u>only</u> change Defendants have made to their My Shoes packaging is to make the plastic window circular instead of rectangular. (Glocker Decl. Ex. B.) The "redesigned" My Shoes packaging still comprises a substantial portion of pediped's trade dress, namely (1) a hinged box with a clear plastic window; (2) the logo and a line of text situated above the plastic window, with the text printed in smaller font; (3) a line of text positioned at the bottom of the box, below the window; (4) the left and right sides of the box adjoining the window of equal proportion to each other; (5) the top portion of the box adjoining the window more than twice the height of the bottom portion of the box adjoining the window; (6) the logo and company information on the back of the box and (7) a cloth carrying handle on the top of the box. Moreover, the overall combination of the shoes as displayed in the packaging is strikingly similar to the enjoined combination. (*See* Glocker Decl. Ex. D).

Far from taking the new designs a safe distance, Defendants continue to unfairly benefit from their infringing activity and should be held in contempt for this reason as well.

## IV.    CONCLUSION

Pediped has acted in good faith in protecting its valuable intellectual property rights from continued encroachment by Defendants, both before and after the Court's injunction. Defendants' conduct is inexcusable. For the foregoing reasons, pediped respectfully requests that the Court grant the present Motion in its entirety.

Respectfully submitted,

BAKER & HOSTETLER LLP

Dated:   New York, New York
         August 22, 2008

By: _____
Thomas A. Canova (TC 7270)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200 – phone
(212) 589-4201 – fax
Attorneys for the Plaintiff
pediped Infant Footwear LLC

088114, 000013, 502014706

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2008, a copy of the foregoing **Plaintiff's Reply and Supplemental Evidence in Support of Motion for Civil Contempt, Equitable and Monetary Sanctions and Expedited Discovery, Declaration of Brad Levy in Support of Motion for Civil Contempt, Equitable and Monetary Sanctions and Expedited Discovery, Declaration of Donald Ticknor, Declaration of Rudy Glocker in Support of Motion for Civil Contempt, Equitable and Monetary Sanctions and Expedited Discovery** were filed electronically. Notice of this filing was sent to all parties who have appeared by operation of the Court's Electronic Filing System.


_____
Theresa Blaber
Paralegal